**Don Ray SMITH, Plaintiff-Appellant,**

v.

**CMTA–IAM PENSION TRUST, et al.,
Defendants-Appellees.**

No 79–4337.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Feb. 10, 1981.

Decided Aug. 27, 1981.

Stanley T. Grydyk, Grydyk & Pierce, Richmond, Cal., for plaintiff-appellant.

Warren Saltzman, Saltzman & Johnson, San Francisco, Cal., argued, for defendants-appellees; David W. Hettig, San Francisco, Cal., on brief.

Before SNEED and ANDERSON, Circuit Judges, and TASHIMA *, District Judge.

SNEED, Circuit Judge:

Appellant Smith appeals from a dismissal of his complaint against the CMTA–IAM Pension Trust (the Plan). Jurisdiction was based on section 502(a)(1)(B) of the Employment Retirement Income Security Program (ERISA), 29 U.S.C. § 1132(a)(1)(B). We affirm in part and reverse in part.

## I.

## FACTS

The facts in this case are not in dispute. The CMTA–IAM Pension Trust is a multiemployer pension plan formed in 1960 by an agreement between the California Metal Trades Association (CMTA) and the Inter-national Association of Machinists (IAM). Employers participating in the Plan make contributions on behalf of IAM-member employees; employees thus covered receive service credits towards pension benefits.

The 1972 Plan revision controls this case and sets the normal retirement age for commencement of retirement benefits at 62 years of age. However, payment of benefits is subject to the condition stated in sections 5.1 and 5.4 of the Plan and Trust Indenture (all references are to the Plan's 1972 revision unless otherwise indicated). These sections provide that the retirement benefits of an otherwise eligible plan member will be suspended during any monthly period in which he is or becomes employed in either the "metal trades industry" or for a "participating employer." [1] Benefits are not suspended if the "retiree" continues or returns to work in other types of employment. Under the circumstances described in section 5.4, working "retirees" may earn additional service credits during a suspension period. Section 8.11 confers upon the Plan's Administrative Committee (the trustees) broad powers relating to the administration of the Plan and, in particular, to the determination of all questions regarding eligibility for payment of benefits.

Appellant was a member of IAM from 1946 until 1962 while employed as a machinist for Bacon Vulcanizing Manufacturing Company, and its successor, Bacon American Corporation (Bacon). Bacon made contributions to the Plan on appellant's behalf for which the Plan credited appellant with 15.7 service units toward retirement benefits. His pension rights vested August 2, 1962. In August, 1970, appellant obtained

---

* Honorable A. Wallace Tashima, United States District Judge for the Central District of California, sitting by designation.

1. Section 5.1 provides:

 Benefits shall begin with the month following the month in which the member first becomes eligible for them, but in no event prior to the later of the following dates: (a) The first day of the month folowing (sic) the month in which the member ceases to be employed in the metal trades industry or for a participating employer.

Section 5.4 provides:

 Any retired member who is or becomes employed in the metal trades industry or for a participating employer ... shall receive no benefits for the month following any month in which he is so employed ...

 An early retiree whose benefits are thus suspended for at least twelve (12) consecutive months will receive credit for contributions payable on his behalf during the suspension period....

employment as a forklift operator and warehouseman under the jurisdiction of the International Longshore and Warehouse Union at Owens-Illinois, a glass manufacturer (Owens). He worked at Owens until his retirement on April 1, 1978. Although Owens never made contributions to the Plan on appellant's behalf, Owens did contribute funds to the Plan for at least 32 of its employees who worked under the jurisdiction of the IAM.

While employed at Owens, appellant filed an application for retirement benefits to commence when he turned 62 years old on August 2, 1974. His application was denied because the trustees determined that appellant not only remained employed in the metal trades industry but also worked for an employer participating in the Plan.

■ After his retirement on April 1, 1978, appellant filed this suit to recover benefits allegedly due him from August 2, 1974, when he turned age 62, until April 1, 1978, the date the Plan commenced paying him benefits. The thrust of his complaint was that the trustees' determination that he worked for a participating employer was unreasonable and unjust because Owens never contributed to the Plan *on his behalf*. He also alleged that his work at Owens was in neither the metal trades industry nor the same trade or craft. In appellant's motion for summary judgment, he also claimed the Plan's suspension provision violated the nonforfeiture rule expressed in ERISA § 203(a), 29 U.S.C. § 1053(a); and that the suspension clause constituted a restraint on the exercise of his lawful trade in violation of Cal.Bus. & Prof.Code § 16600.[2]

The appellees filed a motion to dismiss for failure to state a claim and, in the alternative, a motion for summary judgment. While both parties submitted affidavits, the district judge rejected appellant's affidavit on the ground that he had failed to comply with the time limits for submittal mandated by a local rule. The district court dismissed appellant's entire complaint with prejudice for failure to state a claim. This appeal followed which requires that we address four issues. These are:

1. Was the trustees' interpretation of the Plan arbitrary or capricious and thus a breach of their fiduciary duties?

2. Is appellant entitled to review of his benefit suspensions under ERISA § 203(a), and, if so, does the Plan's suspension clause violate ERISA's general prohibition on the forfeiture of vested pension rights?

3. Does Cal.Bus. & Prof.Code § 16600 prohibit the suspension clause in question?

4. Was it improper for the district court to dismiss appellant's complaint without considering the late affidavit?

## II.

### THE PLAN INTERPRETATION ISSUE

■ Our well-established rule is that the decisions of those empowered with the administration of an employee pension trust shall be sustained unless arbitrary or capricious or contrary to law. *Ponce v. Const. Laborers Pension Trust*, 628 F.2d 537, 541–42 (9th Cir. 1980); *Gordon v. ILWU–PMA Benefit Funds*, 616 F.2d 433, 437–38 (9th Cir. 1980); *Aitken v. IP & GCU–Employer Retirement Fund*, 604 F.2d 1261, 1264 (9th Cir. 1979); *Rehmar v. Smith*, 555 F.2d 1362, 1371 (9th Cir. 1976); *Giler v. Board of Sheet Metal Workers of So. Cal.*, 509 F.2d 848, 849

---

2. Appellees argue that the ERISA claim cannot be raised in this court because it was not properly before the district court. Although Smith's complaint was never technically amended to include either the ERISA or the state claim, both were fully argued in the parties' pre-hearing memoranda as well as at the motions hearing. While we do not approve of appellant's failure to adhere strictly to the procedures for amendment mandated by Fed.R. Civ.P. 15(a), where both parties have fully argued a claim below, we will treat the pleadings as though they have been amended for purposes of appellate review. *See Riley v. MEBA Pension Trust*, 570 F.2d 406, 408 (2d Cir. 1977); *Sherman v. Hallbauer*, 455 F.2d 1236, 1242 (5th Cir. 1972); *Bobrick Corp. v. American Dispenser Co., Inc.*, 377 F.2d 334, 337 (9th Cir. 1967); *Aluminum Co. of America v. Admiral Merch. Motor Freight, Inc.*, 337 F.Supp. 674, 683–84 (N.D. Ill. 1972), *affirmed*, 486 F.2d 717, *cert. denied*, 414 U.S. 1113, 94 S.Ct. 843, 38 L.Ed.2d 739.

(9th Cir. 1975)(per curiam); *accord, Bayles v. Central States, Southeast & Southwest Areas Pension Fund,* 602 F.2d 97, 99–100 (5th Cir. 1979); *Bueneman v. Central States, Southeast & Southwest Areas Pension Fund,* 572 F.2d 1208 (8th Cir. 1978); *Riley v. MEBA Pension Trust,* 570 F.2d 406, 412 (2d Cir. 1977). This is especially true where, as here, the trust instrument confers broad power on the administrators to determine eligibility for benefits under the plan. *Aitken v. IP & GCU–Employer Retirement Fund, supra,* 604 F.2d at 1264; *Bayles v. Central States, Southeast & Southwest Areas Pension Trust, supra,* 602 F.2d at 100; *Riley v. MEBA Pension Trust, supra,* 570 F.2d at 410.

Appellant argues that the trustees' interpretation of the Plan is incorrect because the Plan's provision for accrual of additional benefits would be rendered meaningless unless employment with a "participating employer" is construed to mean employment for which contributions are made. He also asserts that their interpretation works an injustice by allowing the Plan to deny benefits to an otherwise eligible member while failing to credit him with additional service units. In support of his argument, appellant refers us to the 1960 Explanation of Plan Provisions which states that the suspension provision "does not apply if you work for a participating employer in other than covered employment" and that covered employment is "work in a job classification for which a participating employer has agreed to make contributions to the Plan." He acknowledges that the 1960 Plan Explanation does not control his rights, but insists that when its provisions differ from the trustees' interpretation of the Plan an ambiguity arises that should be resolved in his favor.

We disagree. None of appellant's contentions require that the trustees' actions be characterized as arbitrary or capricious. In *Rehmar v. Smith, supra,* this court explicitly rejected the principle that an ambiguity in a plan should be interpreted in favor of coverage and held that where a collectively bargained pension plan gives the fiduciaries broad discretion, the courts should limit their review to whether the fiduciaries' decisions are arbitrary or capricious. 555 F.2d at 1371. Consistent with this approach we have held that when the administrators of a labor-management pension fund have been given authority to determine eligibility under the Plan, their reasonable resolutions of any ambiguities in the Plan's language will be sustained by this court. *Gordon v. ILWU–PMA Benefit Funds, supra,* 616 F.2d at 439; *Aitken v. IP & GCU–Employer Retirement Fund, supra,* 604 F.2d at 1266. Also where the rules are susceptible to more than one reasonable interpretation, we have said that the court may not substitute its judgment for that of the trustees. *Gordon v. ILWU–PMA Benefit Funds, supra.* Other courts employ the same approach. Thus, the Second Circuit has observed that the trustees' interpretation need not be the one this court would have reached, but only an interpretation which has rational justifications. *See Riley v. MEBA Pension Trust, supra,* 570 F.2d at 412.

■ In this case the trustees' interpretation is neither arbitrary nor capricious. Appellees have provided ample justification to support their determination that an otherwise eligible plan member is ineligible for benefits while he continues to work for an employer contributing to the Plan. Thus, failure of the Plan to suspend benefits to members who "retired" and then went to work outside the IAM bargaining unit for either the same or a different contributing employer would cause an anomalous situation to arise in which two co-workers, both vested Plan members and over 62 years old, would receive different retirement coverage. Specifically, a Plan member who remains with the same employer at the same job would clearly be prohibited from receiving payments, while his fellow worker would be drawing benefits from the Plan simply because he left a work position within the union's jurisdiction. A reasonable way to ameliorate this inequality is to interpret the suspension clause to require withholding of retirement benefits from an otherwise eligible member so long as he is employed by an employer making contribu-

tions into the Plan, regardless of whether the employer makes such contributions specifically on behalf of the applicant.

■ Moreover, appellant's employer, Owens, is clearly a "participating employer." The Plan is unambiguous. Section 6.1 of the Plan defines a participating employer as "any employer which qualified as such prior to April 1, 1972, *and any employer which contributes to the Trust after that date....*" (italics added). It is undisputed that Owens made contributions to the Plan after April 1, 1972. The trustees' determination that Owens was a participating employer was certainly a reasonable, if not compelled, decision.[3]

■ Finally, there is no inconsistency between the suspension clause and the Plan's provision for accrual of additional benefits during a suspension period. The credit accrual clause does not state that a retirement age plan member who works for a participating employer *must* receive additional credits during the period he is suspended. Rather, the clause merely refers to the limited circumstances under which an early retiree may earn additional credits, *i. e., when he works for a participating employer that makes contributions to the Plan on his behalf.*[4]

The Plan has been consistently interpreted so as to suspend benefits to Plan members working for employers contributing to

the Plan. Appellant does not contend otherwise. This is a reasonable interpretation and cannot be considered as either arbitrary or capricious.

### THE ERISA CLAIM

■ Appellant's ERISA claim presents a more difficult problem. We must decide whether the suspension clause as interpreted violates federal law under ERISA § 203(a), 29 U.S.C. § 1053(a), which provides in part: "Each pension plan shall provide that an employee's right to his normal retirement benefit is nonforfeitable upon the attainment of normal retirement age ...."[5] A plan's failure to make payments to an eligible participant constitutes an impermissible forfeiture under the Act unless the conditions described in section 203(a)(3) are met.[6] Appellant's position is that the Plan's suspension clause violates ERISA's nonforfeiture rule and falls within no exception. Appellees contend that section 203(a) does not apply in this case, and, in any event, the suspension clause is permissible under section 203(a)(3)(B)(ii). We address the applicability issue first.

A. *Applicability of ERISA § 203(a) to the Determination of Appellant's Pension Rights*

■ The various sections of ERISA became effective at differing times; section

---

**3.** Appellant's reliance on the 1960 version of the Plan is unavailing. Indeed, if appellant's rights were to be construed according to the Plan's earlier versions, his rights would not have vested and he would not have been eligible for retirement benefits until age 65. *See* 1960 Explanation of Plan Provisions at 5–7, Excerpt of Record at 53–54.

**4.** Section 4.1(b) of the Plan defines "early retirement" as retirement at age 55 and Section 4.1(c) defines "normal retirement" as retirement at age 62 or over. Since appellant applied for benefits at *normal retirement age*, the accrual clause has no relevance to his situation because the clause only concerns early *retirees.*

**5.** "The term 'nonforfeitable' when used with respect to a pension benefit or right means a claim obtained by a participant ... to that part of an immediate or deferred benefit under a pension plan which arises from the participant's service, *which is unconditional*, and

which is legally enforceable against the plan." 29 U.S.C. § 1002(19) (italics added).

**6.** The legislative history of the Act makes clear Congress' intent to prohibit plans from utilizing forfeiture clauses. For instance, the Conference Report on *Permitted forfeitures of vested rights* states that with the exception of forfeiture on account of the employee's death, suspension during reemployment by the same employer, or in the case of multiemployer plans, suspension during employment in the same industry, trade and geographic area, "an employee's rights, once vested, are not forfeitable for any reason." House Conference Report No. 93–1280, 93d Cong., 2d Sess. 3, *reprinted in* [1974] U.S.Code Cong. & Ad.News 4639, 5038, 5052–53; *see also* H.R. Rep. No. 93–807, 93d Cong., 2d Sess., *reprinted in* [1974] U.S.Code Cong. & Ad.News 4670, 4725–26.

203(a) became applicable to plans in existence on January 1, 1974 at the commencement of their plan years beginning after December 31, 1975. 29 U.S.C. § 1061(b)(2). Congress did not intend for ERISA to apply retroactively. *City of Los Angeles Dept. of Water and Power v. Manhart*, 435 U.S. 702, 721 n.40, 98 S.Ct. 1370, 1382 n.40, 55 L.Ed.2d 657 (1978).[7] Accordingly, in *Ponce v. Const. Laborers Pension Trust, supra*, 628 F.2d at 541, this court refused to apply ERISA's mandatory vesting provisions so as to reinstate pension rights which had been forfeited pursuant to a pre-ERISA "break-in-service" rule because none of the appellants worked for employers contributing to appellee's multi-employer plan in 1976. *See id.* at 541. Likewise, the Seventh Circuit has held that a former employee could not rely on ERISA to prevent the operation of a "bad boy" forfeiture clause because he was not employed by the company maintaining the plan on the effective date of section 203. *See Fremont v. McGraw-Edison Company*, 606 F.2d 752, 755, 758 (7th Cir. 1979), *cert. denied*, 445 U.S. 951, 100 S.Ct. 1599, 63 L.Ed.2d 786; *accord, Giler v. Board of Sheet Metal Workers of So. Cal., supra*, 509 F.2d at 849 n.1; *Davis v. Central States, Southeast and Southwest Areas Pension Plan*, 460 F.Supp. 926, 928 (E.D.Tenn.1978).

■ However, contrary to appellees' argument, neither *Ponce* nor *Fremont* stand for the proposition that section 203(a) is applicable to the pension rights of Plan members only if *contributions* were being made on their behalf on that section's effective date. The issue in both *Ponce* and *Fremont* was whether ERISA should retroactively apply so as to *vest* rights otherwise previously forfeited *by former employees* under valid pre-1976 plan. To give effect to ERISA in such situations would be tantamount to giving the section retroactive effect. This is precisely the situation Congress intended to prevent by delaying the effective date of section 203 until the 1976 commencement date of plan years. In contrast, the issue in this case is whether a plan member who not only was working for a "participating employer" on April 1, 1976, the date section 203 became effective with respect to his plan, but also acquired vested pension rights on that date, is entitled to certain benefits of that section. We hold that Congress did not intend to exclude a plan participant in appellant's position from all benefits of the section.[8]

■ Appellees also argue that section 203(a) is totally inapplicable in this case because the suspensions commenced prior to April 1, 1976 pursuant to a valid pre-ERISA suspension clause. We see no reason, however, why the operative effect of post-effective date suspension should be the same as that of pre-effective date suspensions. Although section 203(a) should not be retroactively applied to affect any monthly payments suspended prior to April 1, 1976, we

7. Although Congress was concerned that inadequate protections were being afforded to plan participants under prior pension guidelines, the actuarial soundness of pre-ERISA plans depended on a gradual and carefully calculated transformation to meet ERISA's more rigid standards. By delaying the effective date of many of ERISA's provisions, plans have had time to conform to ERISA without endangering their financial stability; further, by applying ERISA only prospectively, plans have not had to resettle claims of former plan participants who lost pension rights under valid pre-ERISA suspension and forfeiture provisions.

8. We are supported in our interpretation by the plain meaning of the statute; section 203(a) prohibits forfeitures of an *"employee's* right to his *normal retirement benefits." (Italics added.)* Section 3(6) of ERISA, 29 U.S.C. § 1002(6), defines the term "employee" as "any individual employed by an employer" and section 3(5), 29 U.S.C. § 1002(5), defines an "employer" as "any person acting directly as an employer ... in relation to an employee benefit plan...." Smith was certainly working for an employer who made contributions to the Plan on April 1, 1976, thereby making him an employee entitled to coverage under the Act. *See, e. g., Fremont v. McGraw-Edison Co., supra*, 606 F.2d at 757–58 (pension rights of an employee who worked for an employer maintaining a single employer plan at commencement of 1976 plan year is entitled to review under section 203(a). Indeed, the Plan's failure to pay appellant retirement benefits at age 62 was premised on the fact Smith *continued to be employed by an employer participating in the Plan* past his normal retirement age and well after April, 1976.

hold that each monthly suspension subsequent to that date must satisfy the requirements stated in section 203(a). As we see it, the fact that the initial suspension occurred prior to 1976 does not mean that the trustees may continue to suspend monthly payments in violation of ERISA after section 203(a) became effective. *See Riley v. MEBA Pension Trust, supra,* 570 F.2d at 411. A contrary conclusion would encourage an employee in appellant's position to waste time and effort in avoiding its consequences. Specifically, if appellant had retired from employment on April 1, 1976, received one month's pension payment, and then returned to work at Owens in May, 1976, a decision to suspend his benefits at that time clearly would have been reviewable under ERISA § 203(a). *See id.* at 411–12; *cf. Morgan v. Laborers Pension Trust Fund for No. Cal.,* 433 F.Supp. 518, 522 (N.D. Cal. 1977) (trustees' decision to deny benefits subsequent to ERISA effective date reviewable under ERISA's fiduciary duties provisions while trustees' earlier decision to deny benefits on similar ground subject to review only under pre-ERISA standards). We should not assume that Congress intended to encourage such avoidance techniques. Appellant, therefore, is entitled to the benefit of ERISA § 203(a) from April 1, 1976, the date section 203(a) became applicable to the Plan, until April 1, 1978, the date the Plan commenced paying him benefits.

**B. ERISA § 203(a)(3)(B)(ii) Exception to the Nonforfeiture Rule**

In the context of this appeal, dismissal of appellant's ERISA claim from April, 1976 until April, 1978 cannot be affirmed unless appellant's complaint—liberally construed in his favor—nonetheless indicates that the suspensions in question were permissible under some exceptions to ERISA's nonforfeiture rule. *See Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957). The exception most relevant to this case appears at ERISA § 203(a)(3)(B), 29 U.S.C. § 1053(a)(3)(B):[9]

A right to an accrued benefit derived from employer contributions shall not be treated as forfeitable solely because the plan provides that the payment of benefits is suspended for such period as the employee is employed . . .

(ii) in the case of multiemployer plan, in the same industry, in the same trade or craft, and the same geographic area covered by the plan, as when such benefits commenced.

The Secretary shall prescribe such regulations as may be necessary to carry out the purposes of this subparagraph. . . .[10]

■ The trustees' decision to suspend appellant's benefits was not based on his fulfillment of the three prerequisites described in section 203(a)(3)(B)(ii). Rather, appellant's benefits were suspended because the trustees determined he was employed in

---

**9.** Section 203(a)(3)(B)(ii) was enacted for a number of reasons and represents a compromise of conflicting interests. Congress undoubtedly realized that by allowing plans to suspend payment of ˌ retirement benefits to members who continue or return to work in the same type of employment, retirees would be discouraged from obtaining such jobs thereby opening the job market for younger plan members. *See Riley v. MEBA Pension Trust, supra,* 570 F.2d at 410. The section also enables plans "to protect participants against their pension plan being used, in effect, to subsidize low-wage employers who hire plan retirees to compete with, and undercut the wages and working conditions of employees covered by, the plan." 120 Cong.Rec. 15737 (remarks of Sen. Williams), *reprinted in* [1974] U.S.Code Cong. & Ad.News 5181–82. However, in order to achieve these goals without forcing pension-

age workers into complete retirement, Congress limited permissible suspensions to those imposed only while the otherwise eligible plan member remained employed in the same industry, same trade, *and* same geographic area covered by his plan.

**10.** The Secretary of Labor has issued regulations which were scheduled to become effective on May 27, 1981. 46 Fed.Reg. 8894 (to be codified at 29 C.F.R. § 2530). The effective date has been postponed until July 1, 1981. *See* 46 Fed.Reg. 28151–52 (1981). While the scheduled regulations are not controlling here, absent a belief that the Secretary has exceeded the authority granted him by section 203(a)(3)(B), we look to these regulations for assistance in interpreting that section where they appear in harmony with the Act's goal.

the metal trades industry and for a participating employer—either of which type of employment was an independent ground for suspension under the Plan. Suspensions, however, that are not expressly permitted by section 203(a)(3)(B) are unlawful even though permitted by the Plan. *Thomson v. I.A.M. National Pension Fund*, 616 F.2d 343, 346 (7th Cir. 1980) (per curiam).

While it is undisputed that appellant's work at Owens was in the same geographic area as that covered by the Plan, the parties disagree as to whether appellant's employment between April 1, 1976 and April 1, 1978 qualifies as employment "in the same industry" and "in the same craft or trade." Appellant claims he was not working in the same industry because Owens, his employer at the time he reached age 62, manufactured glass. Bacon, on the other hand, was engaged in unrelated activities and was not a glass manufacturer. Appellant, therefore, insists that the "same industry" requirement was not met. We disagree.

■ In the case of multiemployer plans such as the one here, it is unlikely that all employers who maintain the plan will be involved in similar business activities. Indeed, a single employer may engage in more than one type of enterprise and many employers although engaged in different enterprises may use similar types of skilled labor. In order to determine whether a potential retirement benefit recipient is employed in the "same industry" within the meaning of section 203(a)(3)(B)(ii), the industrial activities of all employers who maintain the plan for employees employed in such activities at the time the applicant becomes eligible for benefits must be considered. The applicable proposed regulations so provide.[11] So long as an employee serves in the business activities of an employer who, with other employers, maintains the plan to which the employee looks for benefits, the employee serves in the "same industry." This is a reasonable interpretation of section § 203(a)(3)(B)(ii).

■ Whether appellant was employed in the "same trade or craft" covered by the Plan presents a more difficult issue. Appellant alleged below that he was employed as a "machinist" at Bacon whereas he worked as a "forklift operator and warehouseman" at Owens. Without a more detailed description of his duties at both jobs, we cannot determine whether appellant's respective employments involved overlapping skills.[12] Our reluctance to pass on this

11. The proposed regulations define "industry" as "the business activities of the types engaged in by *any employers maintaining the plan*" and "employment in section 203(a)(3)(B)(ii) service" as more than 40 hours of work in a calendar month in "(a)n industry in which employees covered by the plan were employed and accrued benefits under the plan as a result of such employment at the time that the payment of benefits commenced or would have commenced if the employee had not remained in or returned to employment." 46 Fed.Reg. 8905 (to be codified at 29 C.F.R. § 2530.203–3(c)(2)). *See also* example at *id.*

12. The same result would follow even if we were to go outside the pleadings and consider other material in the record relating to Smith's employment. Specifically, in the Joint Trial Statement, prepared by appellees when Smith was still appearing in pro per, the following job descriptions appear:

"Plaintiff's work at Bacon involved crating, packaging, preparing and loading manufactured goods for shipment. Plaintiff's duties included some use of machine tools such as power saws and grinders used in assembling packing crates, and at times he was also required to use a forklift. Plaintiff's duties also included work as a 'relief handyman' in which capacity he worked in various operations, including work on drills, saws, presses, heat treating furnaces and other operations involving a variety of tools." Clerk's Record at 15–3.

"In August, 1970, he began work with Owens-Illinois as a forklift operator and warehouseman. His duties involved receiving and storing manufactured goods in the company's warehouse, as well as preparing and loading such manufactured goods for shipment." Clerk's Record at 15–4.

Although some portion of his duties at both Bacon and Owens appear to have involved preparation of goods for shipment in which connection he operated a forklift, we cannot say, as a matter of law, that the skills appellant practiced in his former employment were significantly the same as those utilized in his latter job at Owens. *Cf.* 46 Fed.Reg. 8905 (to be codified at 29 C.F.R. § 2530.203–3(c)92) (a trade or craft is "a skill or skills, *learned during a significant period of training or practice,*

issue on the basis of the present record is strengthened because the district court indicated that, while it did not pass on the issue, it believed appellant was not engaged in the metal trades industry while employed at Owens. 1 R.T. 18. Although the court was not referring to the same trade or craft condition stated in ERISA but rather to one of the Plan's ground for suspension, the Plan's definition of what constitutes employment in the metal trades industry is even more inclusive than what could properly be called the "same trade or craft" under section 203(a)(3)(B)(ii).[13]

Since appellant's pleading on its face states a valid claim under ERISA § 203(a) for the period between April 1, 1976 and April 1, 1978, the dismissal of this part of his complaint is reversed.

### C. The State Claim

■ The IAM Plan provides that its terms shall be subject to the laws of the State of California. Appellant argues that the Plan's suspension clause violates Cal. Bus. & Prof. Code § 16600 which states that "every contract by which anyone is restrained from engaging in a lawful profession, trade, or business of any kind is to that extent void."[14] He relies on three California cases for support: *Muggill v. Reuben H. Donnelley Corp.*, 62 Cal.2d 239, 398 P.2d 147, 42 Cal.Rptr. 107 (1965); *Frame v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 20 Cal.App.3d 668, 97 Cal.Rptr. 811 (1971); and *Ware v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 24 Cal.App.3d

35, 100 Cal.Rptr. 791 (1972), *affirmed*, 414 U.S. 117, 94 S.Ct. 383, 38 L.Ed.2d 348 (1973).

These cases pertain to pension or profits-haring plans drafted, established, and controlled by the employer-defendants; the plans involved in *Muggill, Frame* and *Ware* each provided that an employee member would lose all rights to benefits if he engaged in any work which the plan's Administrative or Retirement Committee considered to be in competition with the employer's business enterprises. The California courts voided the forfeiture clauses in all three cases pursuant to section 16600. Although we are obligated to interpret state law as would the California courts (*see Aitken v. IP & GCU Employment Retirement Fund, supra*, 604 F.2d at 1269), these cases do not support appellant's position. In *Muggill, Frame* and *Ware*, the state court voided the forfeiture clauses because the employees' loss of rights were absolute and the employers' motive behind including such provisions was to limit business competition. In contrast, the California courts have not considered that application of section 16600 or similar sections in the same chapter was justified in situations where an alleged restraint is limited in nature and furthers sound public policies. *See, e. g., Monogram Ind., Inc. v. Sar Ind.*, 64 Cal.App.3d 692, 697–98, 134 Cal.Rptr. 714 (1976) (section 16600 should be viewed in light of the chapter it is part of, *i. e.*, prevention of covenants not to compete except where fairness requires a limit on competition); *Buskuhl v. Family Ins. Co.*, 271

which is applicable in occupations in some industry. . . .") (Italics added.)

**13.** The Plan defines employment in the "metal trades industry" as: "all employment which is either in a machinist's trade; in a unit represented for collective bargaining purposes by a union; in a machine shop in a Master Agreement Classification; or in such other occupations as the Administrative Committee may determine to be normally considered part of such industry, including (without limitation) occupations such as boilermaker, ironworker, sheet metal worker, blacksmith, molder and metal polisher." Excerpt of Record at 15.

**14.** State laws pertaining to employee benefit plans were superceded by federal law as of January 1, 1975. ERISA § 514, 29 U.S.C.

§ 1144. Since federal law, not state law, controls in the area of federal pension plans after that date, the California statute cannot affect the operation of the Plan's suspension provision subsequent to January 1, 1975. Our holding in this case acknowledges the legality of the Plan's suspension clause under federal law until April 1, 1976 when ERISA § 203(a) became applicable. Accordingly, even if section 16600 were to be applied in this case, appellant's claim under that statute would be limited to the five month period between August 2, 1974, when he became eligible for benefits, and January 1, 1975, when California law was preempted pursuant to ERISA § 514.

Cal.2d 514, 76 Cal.Rptr. 602, 607–08 (1969) (contract providing for loss of otherwise payable commissions when employee leaves employ and then solicits company's customers or employees not void under section 16600); *see also Gordon v. Wasserman*, 153 Cal.App.2d 328, 314 P.2d 759 (1957); *Muggill v. Reuben H. Donnelley Corp., supra*, 398 P.2d at 147.

The Plan's suspension clause in this case neither led to forfeiture of all appellant's pension rights nor was implemented in order for an employer to inhibit possible business competition. Rather, this suspension clause not only was limited in time and scope, but also was part of a collective bargaining agreement implemented in order to further fairness in allocation of retirement benefits as well as to serve the public policies articulated in the discussions regarding appellant's other claims. We are confident California courts would not apply section 16600 to void the limited benefit suspension involved in this case.

### D. *The Excluded Affidavit Issue*

 The court below did not err in refusing to consider the affidavit submitted by appellant. Even if the motion to dismiss is treated as one for summary judgment in favor of appellees, the district court was correct. Appellant filed his own motion for summary judgment over two weeks before hearing. Consequently, he had notice that a summary judgment might be granted but still failed to comply with the local court rules. The district court acted properly.

### III.

### CONCLUSION

We reverse and remand with respect to dismissal of appellant's claim under ERISA for suspensions occurring after April 1, 1976, and affirm the judgment of the district court in all other respects.

Affirmed in part, Reversed in part, and Remanded.

TASHIMA, District Judge, concurring in part and dissenting in part:

I concur in the majority's analysis and disposition of the first two issues raised on this appeal, including its disposition of appellant's ERISA claim. However, I am unable to agree with the majority's disposition of his state law claim and, in my view, it is unnecessary to reach the issue of whether or not it was error for the district court to refuse to consider appellant's late-filed affidavit. Therefore, I respectfully dissent from those portions of the majority's opinion.

One of the grounds on which appellant bases his contention that appellees' refusal to pay him his vested pension benefits was wrongful is that the suspension clause of the CMTA–IAM Pension Plan (the "Plan") is contrary to state law. There is no dispute that California law governs, unless preempted by the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001, *et seq.* ("ERISA").

The Plan's suspension provisions provide that already-vested pension benefits of a retired member of the Plan are subject to suspension if, after retirement, the member is employed by another employer who participates in the (multi-employer) Plan or is employed in the same industry, whether or not the employer is a participating employer in the Plan. Thus, under the Plan, pension benefits are subject to suspension even if, as is the case here, the subsequent employer makes no contributions to the Plan on the employee's account or even if the subsequent employer is not a member of the Plan, so long as that employer is engaged in the "metal trades industry."

The provision of state law which appellant contends is violated by these suspension provisions, Cal.Bus. & Prof. Code § 16600, provides:

"Except as provided in this chapter, every contract by which anyone is restrained from engaging in a lawful profession, trade, or business of any kind is to that extent void."

The majority concludes that appellant's state law claim is meritless by adding to

§ 16600 two requirements which are neither present in the statute nor found in the California cases construing it. The majority construes § 16600 as voiding forfeiture clauses only where "the employees' loss of rights were absolute and the employers' motive behind including such provisions was to limit business competition." Majority opinion at 660. The majority, thus, concludes that the suspension clause in issue here does not violate § 16600 because these two criteria are not met. "The Plan's suspension clause in this case neither led to forfeiture of *all* appellant's pension rights nor was implemented in order for an employer to inhibit possible business competition." Maj. op. at 661 (emphasis added).

The leading and authoritative case is *Muggill v. Reuben H. Donnelley Corp.*, 62 Cal.3d 239, 42 Cal.Rptr. 107, 398 P.2d 147 (1965). There is nothing in the California Supreme Court's opinion in that case which intimates that the two requirements contended for by the majority are essential elements of § 16600. Nowhere is it even implied that inhibition of "possible business competition" must be found before a violation of § 16600 can be established.[1] As for the purported requirement that the forfeiture be "absolute" and that *all* of an employee's pension rights be forfeited, the provision which was invalidated in *Muggill* in fact permitted forfeiture *or* suspension. *Id.* at 240 n. 1, 42 Cal.Rptr. 107, 398 P.2d 147. One would think that because of § 16600's "to that extent void" provision, that if the California Supreme Court intended to construe the statute to require absolute forfeiture of all rights, that it would have voided only the forfeiture provision and not the suspension provision.

The other cases relied on by the majority are equally deficient as authority supporting its position. *Monogram Indus., Inc. v.*

*Sar Indus., Inc.*, 64 Cal.App.3d 692, 134 Cal. Rptr. 714 (1976) is completely inapposite. As the majority recognizes, that case involved a claim under Bus. & Prof. Code § 16601, not § 16600. As § 16600 itself provides ("Except as provided in this chapter"), and as *Monogram* recognizes, the § 16601 situation is expressly excepted from § 16600's reach:

"In California with certain limited exceptions a contract under which a person is prevented from engaging in a profession, trade or business is void (Bus. & Prof. Code § 16600.) The specific exception relevant here is found in Business and Professions Code section 16601...."

*Id.* at 697, 134 Cal.Rptr. 714. There is no contention here that the exception created by § 16601, pertaining to the sale of the goodwill of a business, is applicable. *Monogram* also goes on to observe that, "Covenants arising out of the sale of a business are more liberally enforced then those arising out of the employer-employee relationship." *Id.*

Both *Buskuhl v. Family Ins. Co.*, 271 Cal. App.2d 514, 76 Cal.Rptr. 602 (1969), and *Gordon v. Wasserman*, 153 Cal.App.2d 328, 314 P.2d 759 (1957) (relied on in *Buskuhl*), are unfair competition cases, involving the misappropriation of trade secrets and other breaches of confidence by former employees. In *Buskuhl*, in fact, the court found the unfair competition claims to be dispositive and expressly declined to reach the § 16600 issue. 271 Cal.App.2d at 523, 76 Cal.Rptr. 602. While prevention of ex-employee unfair competition is well recognized in California, *see, e. g., Hollingsworth Solderless Terminal Co. v. Turley*, 622 F.2d 1324, 1329–34 (9th Cir.1980), nothing in the statute or *Muggill* suggests that the presence of unfair competition is required before § 16600 can be invoked.

---

1. It is true that in two of the cases relied upon by the majority, *Ware v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 24 Cal.App.3d 35, 100 Cal.Rptr. 791 (1972), *aff'd*, 414 U.S. 117, 94 S.Ct. 383, 38 L.Ed.2d 348 (1973), and *Frame v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 20 Cal.App.3d 668, 97 Cal.Rptr. 811 (1971), there are passing references to restraint of competi-

tion. However, these references are only to the respective plaintiffs' characterization of their claims and neither opinion adopts restraint of competition as an element of a § 16600 violation. *Ware, supra*, 24 Cal.App.3d at 42, 100 Cal.Rptr. 791; *Frame, supra*, 20 Cal.App.3d at 670 & 672, 97 Cal.Rptr. 811.

If doubt ever existed that restraint of competition and "absolute" forfeiture of all rights are not requisite elements under § 16600, such doubts should have been laid to rest by *Ware.* In *Ware,* in the course of holding that under Cal.Lab. Code § 229, an employee could not be compelled to arbitrate a pension benefit claim, the California Court of Appeal held that, "pension plan benefits are wages within the meaning of the statute. In its legal sense, the word 'wages' has been given a broad, general definition so as to include compensation for services rendered without regard to the manner in which such compensation is computed." 24 Cal.App.3d at 44, 100 Cal.Rptr. 791 (citations omitted). The majority suggests no reason why restraint of competition should be required in a claim essentially to recover wrongfully withheld wages. In affirming *Ware,* the Supreme Court stated:

> "In the area of regulation that we are considering here, California has manifested a strong public policy of protecting its wage earners from what it regards as undesirable economic pressures affecting the employment relationship."

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Ware,* 414 U.S. 117, 139–40, 94 S.Ct. 383, 395–96, 38 L.Ed.2d 348 (1973).

I agree with this Court's prior interpretation of California law regarding the narrow limits of permissible restraint of an ex-employee's conduct:

> "We think the applicable California law is that 'the employer will be able to restrain by contract *only* that conduct of the former employee that would have been subject to judicial restraint under the law of unfair competition, absent the contract.' "

*Hollingsworth, supra,* 622 F.2d at 1338 (emphasis added).

In summary, as I read the California cases, they do not impose the requirement of restraint of competition or absolute forfeiture of all rights for a claim under § 16600; further, the imposition of these requirements is inconsistent with California law. Therefore, the granting of appellees' motion to dismiss because of the absence of these elements was error.

Because of its conclusion that the Plan's suspension clause did not violate § 16600, the majority does not address the question of the applicable law during the period from the time ERISA's preemption provision, 29 U.S.C. § 1144, became effective and the date on which § 203(a) of ERISA, 29 U.S.C. § 1053(a), became applicable to the Plan. Those dates are, respectively, January 1, 1975, and April 1, 1976. *See* Maj. op. at 660 n. 14.

Although this Court has previously rejected "the contention that ERISA's broad policy statements have independent legal force *in this setting,*" *Moore v. Home Ins. Co.,* 601 F.2d 1072, 1074 (9th Cir.1979) (emphasis added), it has not squarely addressed the circumstances present here where, because of the hiatus created by ERISA's staggered effective dates, the law applicable to that hiatus period must be determined. I do not read *Moore* as foreclosing our consideration of this issue.[2]

I do not interpret Congress' intent in enacting the various provisions of ERISA as intending to leave a hiatus period ungoverned by any law; rather, this Court may apply federal common law to that period. *See In re C.D. Moyer Co. Trust Fund,* 441 F.Supp. 1128, 1131 (E.D.Pa.1977), *aff'd,* 582 F.2d 1273 (3d Cir.1978) (ERISA empowers federal courts to develop "a body of law" governing private pension plans). This federal common law is to be ascertained from the policies of ERISA and "the inherited body of common law principles—many of them deriving from earlier legislative exertions," including state law. *Wayne Chemical, Inc. v. Columbus Agency Service Corp.,* 426 F.Supp. 316, 322 (N.D.Ind.1977), *aff'd as*

---

**2.** Although *Moore* declined to follow *Amory v. Boyden Associates, Inc.,* 434 F.Supp. 671 (S.D. N.Y.1976), *Moore* did not involve the situation involved here of a remedial provision of state law being preempted. *Moore* involved an attempt to have ERISA's vesting provision applied prior to its declared effective date, even though no parallel protective provision of state law had been preempted.

modified, 567 F.2d 692 (7th Cir.1977), citing *Moragne v. States Marine Lines*, 398 U.S. 375, 392, 90 S.Ct. 1772, 1783, 26 L.Ed.2d 339 (1970); see also, *Woodfork v. Marine Cooks & Stewards Union*, 642 F.2d 966, 972–73 (5th Cir.1981). In this case, the purpose of both ERISA, § 203(a)(3)(B), and state law, § 16600, are essentially the same: each prohibits restrictions which tend to restrain the movement of employees between jobs. Since the state provision is broader, however, the narrower ERISA provision should govern. In these circumstances, where an applicable state law provision, such as § 16600, is preempted by ERISA, I would hold that the delayed, preempting provision of ERISA, here § 203(a), should be applied during the hiatus period as federal common law. I would, therefore, instruct the district court to apply § 203(a) as the federal common law which governs appellant's claim during the hiatus period from January 1, 1975 to April 1, 1976.

As the majority indicates, the district court granted appellees' motion to dismiss for failure to state a claim and apparently did not reach either of the cross-motions for summary judgment. Because of that disposition below, it is unnecessary for us to reach appellant's contention that the district court erred in refusing to consider a late-filed affidavit in support of his motion. While the affidavit was concededly late, I note that appellant had been acting *pro se* and had retained counsel only shortly before the dispositive hearing. In these circumstances, I would not reach the issue.

I would reverse the judgment of the district court in all respects and remand the case for trial.

