Emma SILES, Plaintiff-Appellant,

v.

ILGWU NATIONAL RETIREMENT
FUND; Dennis Slipkoff; Alvin
Kaplan, Defendants-Appellees.

No. 85–1728.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Dec. 11, 1985.

Decided Feb. 25, 1986.

Geoffrey V. White, Davis, Cowell & Bowe, San Francisco, Cal., for plaintiff-appellant.

Richard Grosboll, Neyhart, Anderson, Nussbaum, Reilly & Freitas, San Francisco, Cal., for defendants-appellees.

Before TANG and WIGGINS, Circuit Judges, and CURTIS, District Judge *

---

WIGGINS, Circuit Judge:

Emma Siles appeals from the district court's grant of summary judgment in favor of the International Lady Garment Workers Union (ILGWU) National Retirement Fund (Fund). She claims that the Fund's requirement that she work at least 435 hours in covered employment in 1974 and 1975 in order to qualify for a pension under a pension plan mandated by the Employee Retirement Income Security Act (ERISA) violates ERISA's transitional rules. 29 U.S.C. § 1061(e) (1982).[1] In the alternative, Siles claims that application of certain of the Plan's provisions to her constitutes a violation of the Fund trustees' fiduciary obligations. Siles also appeals the district court's decision not to certify this case for class action.

## I. FACTS

The Fund was established in February 1951 to provide retirement benefits for union members. It is funded entirely through employer contributions. Under the Fund's retirement plan as it existed from 1951 through 1977 (the "pre-ERISA plan"), an employee became eligible for retirement benefits at the time she retired if she had worked in covered employment for at least twenty credited years, provided that she worked in each of the last ten years immediately preceding retirement. Retirement benefits under the pre-ERISA plan did not vest. An employee became eligible for benefits only at the time she reached age 62 or 65 and retired. Thus, an employee who did not work ten consecutive years immediately before she retired was not eligible for any benefits no matter how many years total she had worked. However, the pre-ERISA plan allowed the Fund trustees to excuse up to three years break in service or credit up to two years service

---

\* The Honorable Jesse W. Curtis, Senior United States District Judge for the Central District of California, sitting by designation.

1. ERISA was amended by the Retirement Equity Act of 1984, Pub.L. No. 98–397, 98 Stat. 1426 (codified in scattered sections of 29 U.S.C.). However, the Retirement Equity Act is not ap-plicable to plan years before January 1, 1985. *Id.* §§ 302, 303, 98 Stat. at 1451–54; *see Bencivenga v. Western Pennsylvania Teamsters and Employers Pension Fund,* 763 F.2d 574, 577 n. 3 (3d Cir.1985). Therefore, all citations in this opinion are to ERISA prior to the Retirement Equity Act of 1984.

if a break in service during the last ten years of employment was caused by circumstances such as illness, disability, or inability to find work.

In 1974, Congress enacted ERISA in response to inequities in the existing system of employee benefit plans. As a result of ERISA, most pension plans were required to adopt new, more liberal rules for determining which employees were eligible for benefits. In 1975 and 1977, the Fund amended its plan to bring the plan into compliance with ERISA (hereinafter the amended plan will be referred to as the "ERISA plan"). Some of the amendments dealt with what an existing employee had to do to become covered by the new ERISA-mandated provisions. This appeal involves the validity of section 3.2 of the ERISA plan, one of its transitional provisions. Section 3.2 provides in pertinent part:

*Section 3.2 Eligibility Requirements* —A Participant shall be eligible for a vested Pension payable as of the next March 1st after she meets all of the following requirements as of the end of any Plan Year after 1974:

(1) she has attained age 62;

(2) she has been credited with at least 10 Years of Vesting Service;

(3) she has been credited with at least 3 Years of Vesting Service after December 31, 1970; and

(4) She is a Participant on or after January 1, 1976 and has not incurred a Break in Service as of January 1, 1976 unless the Break was repaired by a year of Vesting Service after 1975. For the purposes of this paragraph, the following shall be deemed to be a Participant who has not incurred a Break in Service on or before January 1, 1976:

. . . .

(c) a Participant who was credited with at least 435 hours in Covered Employment in 1974 and at least 435 hours of Covered Employment in 1975.

Siles contests the validity of section 3.2(4) of the ERISA plan.

Siles worked continuously in covered employment under the Fund's pension plan from late 1957 until May 1974, when she was laid off. From 1975 through July 1978, Siles continued to pay union dues and regularly sought job referrals from the Union's hiring hall. In 1975 she received three job referrals and was hired for one job for which she was credited with 43 hours of covered employment. In 1976 she obtained one referral from which she obtained a job for which she was credited with 259 hours of covered employment for that year. She has not received any other referrals and has not worked in covered employment since 1976. To obtain credit for a year of covered employment under the plan, an employee must work 870 hours during the year.

In July 1978, Siles turned 62 and applied for early retirement under the plan. In February 1979, her pension application was denied by the Fund. She appealed to the Fund's appeals committee, which denied her appeal in April 1979. The committee informed Siles that her application was denied because (1) she did not have the twenty years covered employment necessary to qualify for the twenty-year pension;[2] and (2) she had not worked sufficient hours in 1975 or 1976 to qualify for the ERISA plan. The committee informed Siles that she needed to work one more year in covered employment to qualify for a pension under the ERISA plan. Siles claims that this is the first time that she received notice concerning the requirements to qualify for a pension under the ERISA plan.

A few days after the appeals committee's decision, Siles received a job referral for temporary work in covered employment. She did not attempt to obtain that job be-

**2.** The ERISA plan carried over the twenty-year pension plan substantially as it existed under the pre-ERISA plan. Thus, under the ERISA plan, an employee could qualify for a pension by satisfying the requirements of the twenty-year plan that she had already been working under or by qualifying for benefits under the ten-year plan mandated by ERISA.

cause she was working at a permanant full-time job in a bakery.

Siles brought suit in the district court against the Fund and two individuals, challenging the validity of the Fund's denial of her application for benefits. Siles moved the district court to certify a plaintiff class consisting of all beneficiaries of the Fund who had been denied benefits for the same reasons that her benefits had been denied. The district court denied the motion on the ground that Siles had not sufficiently proved numerosity or that she could adequately represent the class.

After denial of class certification, the parties each moved for summary judgment. The district court denied Siles's motion and granted the Fund's motion in part. The court declined to grant summary judgment on the issue of whether the Fund had given Siles adequate notice of what she needed to do to qualify for a pension under the ERISA plan. It found that there was an issue of fact regarding the adequacy of the notice given to Siles. The Fund then moved for summary judgment on that issue, and Siles filed a cross motion for summary judgment. The court granted the Fund's motion and denied Siles's. It held that while there was an issue of fact regarding whether the notice given to Siles was adequate, summary judgment was proper because Siles had not detrimentally relied on the lack of notice.

## II. STANDARD OF REVIEW

■ We review a district court's grant of summary judgment *de novo*. *Lojek v. Thomas*, 716 F.2d 675, 677 (9th Cir.1983). Summary judgment is appropriate if, viewing the evidence in the light most favorable to the party opposing the motion, there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. *Id.;* Fed.R.Civ.P. 56(c). Al-

though we review *de novo* the district court's grant of summary judgment on the issue of the trustees' breach of their fiduciary obligation, we may reverse the trustees' decision only if it was arbitrary and capricious. *Brug v. Pension Plan of Carpenters*, 669 F.2d 570, 573 (9th Cir.), *cert. denied*, 459 U.S. 861, 103 S.Ct. 135, 74 L.Ed.2d 116 (1982).

■ A district court's denial of class certification will not be overturned unless the district court abused its discretion. *Wrighten v. Metropolitan Hospitals*, 726 F.2d 1346, 1352 (9th Cir.1984).

## III. DISCUSSION

### A. *Violation of ERISA*

One of the principal purposes of ERISA is the protection of employees' rights to pensions. 29 U.S.C. § 1001(a) (1982). This purpose is accomplished primarily through ERISA's minimum participation and vesting requirements. 29 U.S.C. §§ 1052, 1053 (1982). These requirements became effective for plans in existence on January 1, 1974 at the beginning of the first plan year beginning after December 31, 1975. 29 U.S.C. § 1061(b)(2) (1982); *see Smith v. CMTA–IAM Pension Trust*, 654 F.2d 650, 656 & n. 7 (9th Cir.1981).

However, to stop plans from cutting off employees between the time ERISA was enacted and the time it became effective, Congress enacted transitional rules. The transitional rule relevant to this appeal is contained in 29 U.S.C. § 1061(e)(2) (1982), which provides essentially that a plan may change its vesting requirements after January 1, 1974 only if the new vesting requirements meet either of two requirements: be at least as favorable to employees as the vesting requirements under the pre-ERISA plan or comply with ERISA.[3]

---

**3.** 29 U.S.C. § 1061(e)(2) provides:

No pension plan to which section 1053 [vesting requirements] of this title applies may make effective any plan amendment with respect to breaks in service (which amendment is made or becomes effective after January 1, 1974, and before the date on which

section 1053 of this title first becomes effective with respect to such plan) if such amendment provides that the nonforfeitable benefit derived from employer contributions to which any employee would be entitled is less than the lesser of the nonforfeitable benefit

Siles claims that section 3.2(4) of the ERISA plan is both less beneficial to her than the break-in-service rules of the pre-ERISA plan and violates ERISA. Because we conclude that section 3.2(4) complies with ERISA, we need not address Siles first contention.

The only ERISA question we consider on this appeal is whether section 3.2(4) complies with ERISA's break-in-service rules for the minimum vesting requirements.[4] We hold that it does.

To understand Siles's claim it is necessary to understand ERISA's minimum vesting standards. ERISA allows pension plans to choose among three alternative minimum vesting provisions. 29 U.S.C. §§ 1053(a)(1), (2) (1982). The vesting provision chosen by the Fund for its ERISA plan provides that "an employee with at least 10 years of service [must have] a nonforfeitable right to 100 percent of his accrued benefits derived from employer contributions." 29 U.S.C. § 1053 (a)(2)(A) (1982).

In computing an employee's years of service for purposes of the minimum vesting requirements, a plan must take into ac-

count all of the employee's years of service with the employer subject to several exceptions not relevant to this case. 29 U.S.C. § 1053(b)(1) (1982). However, this requirement is subject to several break-in-service rules found in section 1053(b)(3). Two of those rules are applicable to this appeal.

Section 1053(b)(3)(B) states that when an employee has a one-year break in service,[5] the pension plan need not take into account years of service before the break until the employee returns to work and completes a year of service.[6] Section 1053(b)(3)(D) states that for an employee who does not have a vested right to any benefits derived from employer contributions, years of service before a one-year break in service are not required to be taken into account if the number of consecutive one-year breaks equals or exceeds the total years of service the employee had accrued before the break in service began.[7] Thus, putting section 1053(b)(3)(D) in positive terms, a pension plan is required to count years of service before a break in service occurs unless the employee's consecutive break-in-service years equal or exceed the years of service before the breaks.

---

derived from employer contributions to which he would be entitled under—
  (A) the break in service rules of section 1052(b)(3) of this title, or
  (B) the plan as in effect on January 1, 1974.

4. Siles claims that there is also a question regarding her participation in the ERISA plan. We do not address this claim for two reasons. First, section 3.2(4) of the ERISA plan applies only to participants. Therefore, for purposes of Siles's challenge to that section we assume that she is a participant. Second, Siles's right to receive the benefits that she seeks turns on whether she has a vested right to those benefits. It does not turn on whether she is a participant in the ERISA plan. ERISA defines "participant" as an employee who is or may become entitled to retirement benefits. 29 U.S.C. § 1002(7) (1982). Thus, even if we determine that Siles is a participant in the ERISA plan, we still must answer the question whether she is an employee who is entitled to benefits or only one who may become so entitled. The answer to this question turns on whether Siles has a vested right to benefits.

5. A one-year break in service is defined as any twelve-month period in which an employee does

not work at least 500 hours. 29 U.S.C. § 1053(b)(3)(A).

6. Section 1053(b)(3)(B) states:
  For purposes of paragraph (1) [rules for calculating years of service], in the case of any employee who has any 1-year break in service, years of service before such break shall not be required to be taken into account until he has completed a year of service after his return.

7. Section 1053(b)(3)(D) states:
  For purposes of paragraph (1) [rules for calculating years of service], in the case of a participant who, under the plan, does not have any nonforfeitable right to an accrued benefit derived from employer contributions, years of service before any 1-year break in service shall not be required to be taken into account if the number of consecutive 1-year breaks in service equals or exceeds the aggregate number of such years of service prior to such break. Such aggregate number of years of service before such break shall be deemed not to include any years of service not required to be taken into account under this subparagraph by reason of any prior break in service.

Siles claims that section 3.2(4) of the ERISA plan does not comply with ERISA because it does not incorporate the requirements of section 1053(b)(3)(D). She claims that section 3.2(4) has the effect of depriving her of all her years of service prior to her break in service that began in 1975, and that it does this before her break-in-service years equal or exceed her years of service prior to the breaks.

Siles is correct in her assertion that section 3.2(4) does not allow her to count her prebreak years for purposes of the ERISA plan. However, Siles misinterprets ERISA's break-in-service rules by focussing entirely on section 1053(b)(3)(D) to the exclusion of section 1053(b)(3)(B).[8] While section 1053(b)(3)(D) requires that years before a break in service be taken into account unless the number of break years equals or exceeds the years of service prior to the break, section 1053(b)(3)(B) permits a plan to disregard years of service prior to a break until the employee returns and completes one year of service after the break. Sections 1053(b)(3)(B) and 1053(b)(3)(D) must be read together. Under section 1053(b)(3)(D), an employee has a right to have years of service prior to a break in service counted towards her vesting requirement. However, under section 1053(b)(3)(B), that employee must return to work and work for a year to cure the break before she can exercise her right to have the prior years counted.

Reading the two sections together makes it clear that section 3.2(4) of the ERISA plan complies with ERISA. That section of the plan merely requires that an employee who has a break in service prior to 1976, the year ERISA's vesting requirements became effective for this plan, return to work for at least one year after 1975 to cure the break. This requirement is specifically permitted by section 1053(b)(3)(B) and does not

violate section 1053(b)(3)(D). Plan section 3.2(4) would violate ERISA if it stated that for an employee to be entitled to count years of service before a break she must return to work at some point earlier than the time at which her break-in-service years equal or exceed her prior years of service.

Siles also argues that she qualified for the ERISA plan by working in covered employment in 1976. She relies on our decision in *Smith v. CMTA–IAM Pension Trust,* 654 F.2d 650 (9th Cir.1981), to support this argument. *Smith* is inapplicable to this case. In *Smith,* an employee's retirement benefits were suspended in 1974 because he continued to work for a contributing employer after age 62. The benefits were commenced again when he retired from work with that employer in 1978. We held that ERISA's vesting provisions applied to his claim against the pension plan because he was working for a covered employer in 1976, the effective date of section 1053(a)'s vesting provisions. *Id.* at 657. However, we recognized that ERISA's vesting provisions were not to be applied retroactively, and we applied those provisions only to the suspension of his benefits after 1976. *Id.* at 657–58. We specifically stated that we were not deciding a case involving "whether ERISA should retroactively apply so as to vest rights otherwise previously forfeited *by former employees* under a valid pre-1976 plan." *Id.* at 657 (emphasis in original). Siles has forfeited her benefits under a valid pre-1976 plan. Therefore *Smith* does not apply to this case.

We point out that our reading of ERISA does not deprive Siles of any retirement benefits that she has earned. She needed to work another five years to qualify for a pension under the pre-ERISA plan. Even

---

**8.** Siles attempts to avoid the operation of section 1053(b)(3)(B) by arguing that it applies to employees while section 1053(b)(3)(D) applies to nonvested participants. She argues that she is a participant and not an employee. The first half of her argument is valid. Section 1053(b)(3)(B) applies to employees, and section 1053(b)(3)(D) applies to nonvested participants. The second half of her argument, however, is clearly wrong. ERISA defines "participant" in terms of "employee." 29 U.S.C. § 1002(7) (1982). Therefore, all participants are employees, and both of these sections apply to Siles.

if the trustees of the Fund had exercised their discretion to excuse three of her break-in-service years or credit her with two years, she would have had to work at least two more years to qualify for a pension under the pre-ERISA plan.

Siles simply got caught between two congressional purposes. Congress wanted to protect employees such as Siles from losing their pension benefits, but it did not want to accomplish that purpose at the expense of bankrupting pension funds. It therefore delayed the effective date of ERISA's vesting provisions and provided rules for the transition to ERISA. The Fund's section 3.2(4) is valid under those transitional rules.

### B. *Breach of Fiduciary Duty by the Plan Trustees*

■ Siles next claims that the Plan trustees violated the fiduciary duty they owed to her. Under 29 U.S.C. § 1104 (1982), trustees with discretion to establish benefit provisions must act solely in the interests of the participants and beneficiaries of the plan. This court implements this requirement through the "structural defect" test. Under that test, rules that exclude employees from receiving benefits for reasons that are arbitrary and capricious are structurally defective and violate section 1104. *Harm v. Bay Area Pipe Trades Pension Plan Trust Fund*, 701 F.2d 1301, 1305 (9th Cir.1983). Therefore, the question becomes whether the trustees acted arbitrarily and capriciously.

Siles first claims that the trustees acted arbitrarily and capriciously in adopting section 3.2(4) because they have not demonstrated a legitimate justification for restricting the applicability of ERISA's ten-year vesting requirement.

■ If the trustees of an employee pension plan adopt a rule that prevents a disproportionate number of employees from receiving benefits, the burden shifts to the trustees to show a reasonable pur-

pose for the exclusion. *Harm*, 701 F.2d at 1305. The district court found that Siles had not shown that section 3.2(4) excluded a disproportionate number of employees from receiving benefits. However, even if she had made that showing, the Fund has shown a reasonable purpose for the exclusion. The Fund stated in its brief in this court that the new provision was adopted to ensure the Plan's actuarial soundness. Employer contributions to the Plan had been based on an actuarial assumption of twenty years employment with the last ten years of employment being continuous. If the fund immediately vested everyone who had worked ten years, it would not have had sufficient resources to satisfy its pension obligations. Instead, the Fund chose to vest only employees who met certain requirements permitted by ERISA. We hold that the trustees have shown a reasonable purpose for section 3.2(4). They therefore did not violate their fiduciary duties by adopting that provision.

■ Siles next claims that it was arbitrary and capricious for the trustees to apply section 3.2(4)'s 435 hour requirement for 1975 to her involuntary unemployment. She relies on our decision in *Lee v. Nesbitt*, 453 F.2d 1309 (9th Cir.1972), to support this argument.

In *Lee*, we held that it was arbitrary and capricious for a pension trust to apply a break-in-service rule to deprive an employee of benefits when the break in service resulted from involuntary unemployment. *Id.* at 1312. However, we based our decision in *Lee* on the fact that the employee involved in that case had worked enough hours to qualify for a pension. All he needed to do to receive a pension was to continue working until he reached retirement age. An involuntary period of unemployment during the time the employee was waiting to reach retirement age disqualified him for a pension he had otherwise earned. We stated:

> We think that the rule, to the extent it prohibits benefits to an employee solely

because of an involuntary interruption in employment after the completion of his minimum employment requirement and before reaching retirement age, is unreasonable on its face.

*Id.*

Siles has not been prohibited from receiving benefits that she had already earned. At the time this rule was applied to her, she had not earned benefits either under the pre-ERISA plan or under the ERISA plan. Therefore, the reasoning of *Lee* is inapplicable to this case.

■ Siles's last argument is that it was arbitrary and capricious for the fund to retroactively apply the 435-hour requirement to her without giving her adequate notice of the requirement. The district court stated that it did not need to address this argument because it found that Siles had done all that she could to find covered work from 1975 through 1979. It therefore found that Siles had not detrimentally relied on the lack of notice.

We agree with the district court's finding that Siles had done all that she could to find covered work from 1975 through 1979. However, we do not agree that Siles must prove that she detrimentally relied on the lack of notice. That is an impossible standard to meet. A person can never prove detrimental reliance on a lack of notice because by definition she had nothing to rely on. However, to recover Siles must show that she was harmed in some way by the lack of notice. *See Burroughs v. Board of Trustees*, 542 F.2d 1128, 1131 (9th Cir.1976), *cert. denied*, 429 U.S. 1096, 97 S.Ct. 1113, 51 L.Ed.2d 543 (1977) (notice is required to give employees a reasonable opportunity to protect themselves from the impact of a new rule).

We find that Siles was not harmed even if the trustees did fail to give her notice of what she needed to do to qualify for a pension under the ERISA plan.[9] Siles's own testimony demonstrates that she did all she could to find covered work in 1975 through 1978. Even if she had received adequate notice, she could not have done anything more.

### C. *Class Certification*

■ The trial court denied class certification because it found that Siles did not establish numerosity or that she could adequately represent the class. *See* Fed.R. Civ.P. 23(a). This finding was not an abuse of discretion. Siles's only evidence of numerosity was that 31,000 employees covered by the plan lost their jobs in 1974 and 1975. There is no evidence regarding how many of these employees did not receive a pension, how many worked ten years in covered employment, or how many did not work a year in covered employment after 1976.

### IV. CONCLUSION

The district court's grant of summary judgment in favor of the Fund is AFFIRMED.

---

9. There is some evidence in the record to indicate that Siles was given notice of the requirements of the ERISA plan prior to 1979. However, given our disposition of this issue, we need not decide whether that notice was timely or adequate.