691 F.2d 74
 3 Employee Benefits Ca 2312
 Clara DUCHOW, Individually and as Administratrix of the
Estate of Herman Duchow, Deceased, Plaintiff-Appellant,
v.
NEW YORK STATE TEAMSTERS CONFERENCE PENSION AND RETIREMENT
FUND, T. E. Nolan, Irving Wisch, William H. Mosley, Sr.,
Kepler Vincent, Rocco F. DePerno, Jack Canzoneri, Victor
Mousseau and Paul Bush as Trustees of the New York State
Teamsters Conference Pension and Retirement Fund,
Defendants-Appellees.
 No. 1068, Docket 81-7635.
 United States Court of Appeals,
Second Circuit.
 Argued April 28, 1982.
Decided Oct. 6, 1982.
 
 Frank J. Dolce, Buffalo, N. Y. (Collins, Collins & Di Nardo, P. C., Buffalo, N. Y., on the brief), for plaintiff-appellant.
 Peter P. Paravati, Utica, N. Y. (Peter P. Paravati, P. C., Utica, N. Y., on the brief), for defendants-appellees.
 Before MANSFIELD and KEARSE, Circuit Judges, and CABRANES, District Judge.*
 KEARSE, Circuit Judge:
 
 
 1
 Plaintiff Clara Duchow appeals from a final judgment of the United States District Court for the Western District of New York, John T. Curtin, Chief Judge, dismissing her suit against defendants New York State Teamsters Conference Pension and Retirement Fund ("the Fund") and its individual trustees seeking a declaratory judgment that she is entitled to certain benefits from a pension fund of which her late husband, Herman Duchow ("Duchow"), was a member. The district court denied plaintiff's motion for partial summary judgment and granted defendants' motion for summary judgment on the ground that Duchow's right to pension benefits had not vested. We conclude that the Employee Retirement Income Security Act ("ERISA" or "the Act"), 29 U.S.C. §§ 1001 et seq. (1976), requires that pension benefits become vested upon an employee's attainment of "normal retirement age," as defined in the Act, and that Duchow's rights had vested. We therefore reverse the judgment of the district court and remand for entry of partial summary judgment in favor of plaintiff and for determination of the amount of benefits to which she is entitled.
 
 BACKGROUND
 
 2
 The relevant facts are not in dispute. Duchow became an employee of Southland Frozen Foods, Inc. ("Southland"), on September 1, 1963. Subsequently, Southland entered into a collective bargaining agreement with Local Union No. 558 of the International Brotherhood of Teamsters. As a result, on February 1, 1969, Duchow became a member of the pension plan ("the Plan") established by the Fund. In February 1977, at the age of 69, Duchow applied to the Board of Trustees of the Fund for pension benefits. His application was denied. On May 31, 1977, Duchow terminated his employment with Southland. He thereafter returned to Southland and was employed there in January and February of 1979. During this period Duchow reapplied for pension benefits. This application too was denied.
 
 
 3
 In denying Duchow's applications, the Trustees took the position that Duchow had no vested pension rights because he had not fulfilled the Plan's service requirements. They relied on Plan provisions that, in order to receive pension benefits, an employee must have attained either
 
 
 4
 (a) Age 60 with 15 or more years of past and future service combined, or
 
 
 5
 (b) Age 65 with 10 or more years of future service.
 
 
 6
 "Past service" meant the period of employment prior to the date the employer became obligated to make contributions to the Plan-in Duchow's case, February 1, 1969; "future service" meant the period of employment following that date. As of February 1979, Duchow had 5.4 years of past service and 8.9 years of future service, for a total of 14.3 years. Thus, although he was over the age of 65, Duchow concededly met neither of the Plan's alternative requirements with respect to periods of service.
 
 
 7
 The present action was commenced by Duchow in 1979. Upon his death, plaintiff, as his administratrix and widow, was substituted for him. She seeks to recover for benefits to which Duchow was entitled during his lifetime, as well as survivor benefits to which she is personally entitled. Her entitlement to survivor benefits depends on the eligibility of Duchow to receive benefits. The district court granted summary judgment in favor of defendants on the ground that Duchow had not met the Plan's service requirements. Plaintiff contends that, notwithstanding the Plan's service requirements, ERISA required that Duchow's right to accrued pension benefits be recognized as vested on February 1, 1979, the tenth anniversary of his joining the Plan. For the reasons below, we agree.
 
 DISCUSSION
 
 8
 ERISA, enacted in 1974, established a comprehensive federal regulatory scheme governing private retirement pension plans. The Act was passed after congressional investigations indicated that regulation was necessary in order to curb abuses of such plans. See 29 U.S.C. § 1001 (1976); see also Alessi v. Raybestos-Manhattan, Inc., 451 U.S. 504, 510, 101 S.Ct. 1895, 1899, 68 L.Ed.2d 402 (1981); Nachman Corp. v. Pension Benefit Guaranty Corp., 446 U.S. 359, 362, 100 S.Ct. 1723, 1726, 64 L.Ed.2d 354 (1980). More specifically, Congress found, inter alia, "that owing to the termination of plans before requisite funds have been accumulated, employees and their beneficiaries have been deprived of anticipated benefits...." 29 U.S.C. § 1001(a). ERISA was designed to reduce, by various means, the number of pension benefits lost.
 
 A. Minimum Vesting Requirements Under ERISA
 
 9
 As one method of accomplishing the goal of decreasing the number of lost pensions, § 203 of ERISA established certain minimum vesting requirements that all covered plans must meet. Section 203(a) provides, in pertinent part, as follows:
 
 Minimum vesting standards
 
 10
 (a) Nonforfeitability requirements
 
 
 11
 Each pension plan shall provide that an employee's right to his normal retirement benefit is nonforfeitable upon the attainment of normal retirement age and in addition shall satisfy the requirements of paragraphs (1) and (2) of this subsection.
 
 
 12
 (1) A plan satisfies the requirements of this paragraph if an employee's rights in his accrued benefit derived from his own contributions are nonforfeitable.
 
 
 13
 (2) A plan satisfies the requirements of this paragraph if it satisfies the requirements of subparagraph (A), (B), or (C).
 
 
 14
 (A) A plan satisfies the requirements of this subparagraph if an employee who has at least 10 years of service has a nonforfeitable right to 100 percent of his accrued benefit derived from employer contributions.
 
 
 15
 (B) A plan satisfies the requirements of this subparagraph if an employee who has completed at least 5 years of service has a nonforfeitable right to a percentage of his accrued benefit derived from employer contributions which percentage is not less than the percentage determined under the following table: (table omitted).
 
 
 16
 (C)(i) A plan satisfies the requirements of this subparagraph if a participant who is not separated from the service, who has completed at least 5 years of service, and with respect to whom the sum of his age and years of service equals or exceeds 45, has a nonforfeitable right to a percentage of his accrued benefit derived from employer contributions determined under the following table: (table omitted).
 
 
 17
 (ii) Notwithstanding clause (i), a plan shall not be treated as satisfying the requirements of this paragraph unless any participant who has completed at least 10 years of service has a nonforfeitable right to not less than 50 percent of his accrued benefit derived from employer contributions and to not less than an additional 10 percent for each additional year of service thereafter.
 
 
 18
 29 U.S.C. § 1053(a) (1976). Thus, under § 203(a)(2), a plan is required to adopt one of three vesting standards linked to the employee's years of service. There is no question that the Plan at issue here meets the requirements of § 203(a)(2). It provides for "100% vesting after 10 years of future service, that is, years in which contributions are made on behalf of the employee," and thereby complies with the standard set in subparagraph (A). Defendants contend that no more is required.
 
 
 19
 Plaintiff argues, however, that the first clause of § 203(a) imposes an additional minimum vesting requirement. That clause states that "(e)ach pension plan shall provide that an employee's right to his normal retirement benefit is nonforfeitable upon the attainment of normal retirement age ...." 29 U.S.C. § 1053(a). "Normal retirement age" is defined in § 3(24) of the Act as
 
 
 20
 the earlier of-
 
 
 21
 (A) the time a plan participant attains normal retirement age under the plan, or
 
 
 22
 (B) the later of-
 
 
 23
 (i) the time a plan participant attains age 65, or
 
 
 24
 (ii) the 10th anniversary of the time a plan participant commenced participation in the plan.
 
 
 25
 29 U.S.C. § 1002(24). Reading "10th anniversary" in accordance with its normal meaning, plaintiff contends that in order to comply with § 203(a) a plan not only must provide for vesting upon completion of a certain period of service, but also must provide for vesting at a certain time regardless of the employee's years of service.
 
 
 26
 We agree that § 203(a)'s provisions with regard to employer contributions are properly interpreted as imposing two distinct types of minimum vesting requirements, one of which is independent of the employee's years of service.[1] We reach this conclusion on the basis of the statutory language, legislative history, and declared purposes of ERISA.
 
 
 27
 First, the elaborately conjunctive language of § 203(a), requiring that a plan "shall provide ... nonforfeitab(ility) upon the attainment of normal retirement age and in addition shall satisfy the requirements of paragraph ( ) ... (2) of this subsection" (emphasis added), suggests strongly that two sets of requirements are imposed. The differing thrusts of the language of paragraph (2) and the first clause of § 203(a) provide further support for this view. Paragraph (2) provides three alternative standards, each of which deals with the plan's service requirements; none of the three makes any mention of retirement age. Accordingly, § 203(a)(2) has been described as requiring vesting of rights "prior to retirement." See, e.g., Alessi v. Raybestos-Manhattan, Inc., supra, 451 U.S. at 510, 101 S.Ct. at 1899. In complementary fashion, the first clause of § 203(a) refers only to the attainment of normal retirement age and makes no mention of periods of service. Thus both the format of § 203(a) and the disparate contents of its conjoined parts indicate that two discrete vesting requirements are imposed, the first linked to age without regard to length of service and the second depending on length of service without regard to age.
 
 
 28
 The legislative history of § 203(a) confirms the correctness of this reading of the statutory language. The first clause of § 203(a) did not appear in the original House and Senate bills that led to the enactment of ERISA. Rather, the early versions of § 203(a) were devoted to the imposition of a requirement that rights become vested prior to the employee's retirement. Committee reports stated that the goal was to introduce protection for the worker whose employment was terminated before he reached retirement age and who often thereby was denied pension benefits regardless of the number of years he had worked. See, e.g., H.R.Rep.No.93-807, 93d Cong., 2d Sess. 3, 22, 53 (1974), reprinted in 1974 U.S.Code Cong. & Ad.News, 4670, 4672, 4689, 4719; Sen.Rep.No.93-383, 93d Cong., 2d Sess. (1974), reprinted in 1974 U.S.Code Cong. & Ad.News 4890, 4891, 4901, 4907, 4929. By contrast, the reports noted that "present law" already required that an employee's retirement benefit rights vest at his retirement age:
 
 
 29
 Plans which qualify under the Internal Revenue Code are now required to provide vested (i.e., nonforfeitable) rights to participating employees when they attain the normal or stated retirement age....
 
 
 30
 However, qualified corporate plans are generally not required to provide vested rights to participating employees before normal retirement age....
 
 
 31
 H.R.Rep.No.93-807, 93d Cong., 2d Sess. 53 (1974), reprinted in 1974 U.S.Code Cong. & Ad.News 4670, 4719; accord Sen.Rep.No.93-383, 93d Cong., 2d Sess. (1974), reprinted in 1974 U.S.Code Cong. & Ad.News 4890, 4929. Thus, the original bills were plainly concerned with creating vesting rights in addition to the already existing "retirement age" vesting requirement.
 
 
 32
 The compromise bill that became ERISA made it clear that Congress wished to preserve the already existing vesting requirements as well. The first clause of § 203(a), expressly requiring the vesting of an employee's rights upon his attainment of normal retirement age, was inserted by the House and Senate Conference Committee, which proposed its own version of the minimum vesting provision. After discussing the conference modifications of the proposed vesting standards relating to service, the Joint Explanatory Statement in the Conference Committee Report stated as follows:
 
 
 33
 In addition, all plans would have to meet the requirement of present law that an employee must be 100 percent vested in his accrued benefit when he attains the normal or stated retirement age (or actually retires).
 
 
 34
 H.R.Rep.No.93-1280, 93d Cong., 2d Sess. (1974), reprinted in 1974 U.S.Code Cong. & Ad.News 5038, 5050.
 
 
 35
 Finally, the interpretation of § 203(a) as imposing two independent vesting requirements is consistent with and furthers the congressional purpose. As discussed above, ERISA is a remedial statute, enacted to protect the beneficiaries of retirement plans by reducing the risk of loss of pension benefits. Interpreting the first clause of § 203(a) to set forth an additional vesting requirement furthers this goal. Certainly we have found no support for the proposition that Congress intended to eliminate what it perceived as a benefit already enjoyed by employees, and thereby to increase employees' losses of retirement plan benefits.
 
 
 36
 We do not believe that a contrary interpretation is required by statements in the original committee reports to the effect that vesting requirements should be "age neutral" so as not to discourage employers from hiring older employees. See, e.g., Sen.Rep.No.93-383, 93d Cong., 2d Sess. (1974), reprinted in 1974 U.S.Code Cong. & Ad. News 4890, 4905. First, we note that in order that other provisions of the Act not have the effect of encouraging age discrimination, § 202(a)(2)(B) of ERISA provides that a worker hired within five years of his attainment of normal retirement age need not be allowed to participate in the pension plan. 29 U.S.C. § 1052(a)(2)(B). Second, the effect of the interpretation we adopt is not, as defendants would have it, " 'to grant older people vested rights to their accrued pension benefits more quickly than younger people.' " (Defendants' brief on appeal at 5 (quoting Sen.Rep.No.93-383, 93d Cong., 2d Sess. (1974), reprinted in 1974 U.S.Code Cong. & Ad.News 4890, 4905).) Under the statutory definition of "normal retirement age," vesting cannot occur earlier than the tenth anniversary of the employee's joining the plan, unless the plan itself provides for an earlier date.[2]
 
 
 37
 In sum, we conclude that the language, history and purposes of ERISA point forcefully to the conclusion that the first clause of § 203(a) imposes a vesting requirement that is independent of the service-period vesting standards imposed in § 203(a)(2).[3] All that remains is the question of the proper interpretation of "10th anniversary" in the definition of "normal retirement age."
 
 
 38
 B. The Meaning of "Anniversary"
 
 
 39
 Defendants contend that even if on its face the first clause of § 203(a) seems unrelated to any service requirement, a service requirement is incorporated by the portion of the definition of "normal retirement age" that refers to the plan participant's "10th anniversary," i.e.,
 
 
 40
 (B) the later of-
 
 
 41
 (i) the time a plan participant attains age 65, or
 
 
 42
 (ii) the 10th anniversary of the time a plan participant commenced participation in the plan.
 
 
 43
 29 U.S.C. § 1002(24)(B). They argue that "10th anniversary" means tenth year of service, a "year of service" being defined in § 203(b)(2)(A) of the Act, 29 U.S.C. § 1053(b)(2)(A), as 1000 hours of service. We believe that "anniversary" was intended to have its ordinary meaning rather than the strained construction defendants would give it.
 
 
 44
 The normal dictionary meaning of the word "anniversary" is "the annual return of the day of a past event." Webster's Second International Dictionary 108 (2d ed. 1957). The word plainly denotes a date rather than the years between the date and the past event. ERISA itself does not contain a definition of "anniversary." This omission, in a complex statute replete with defined terms, suggests that the ordinary meaning of the word was intended. We note also that § 206(a) of the Act, which is entitled "Commencement date for payment of benefits," refers to the 60th day after "the close of the plan year in which ... occurs the 10th anniversary of the year in which the participant commenced participation in the plan." 29 U.S.C. § 1056(a)(2). Thus, "anniversary" is used in § 206(a)(2) for its normal denotation of a date rather than a period of time. There is no reason to believe Congress intended a different denotation in the definition of normal retirement age. Further, to construe the use of the word "anniversary" as imposing a service requirement would be inconsistent with the Act's legislative history and purposes discussed above. And had Congress intended "normal retirement age" to be dependent on ten years of service, it would hardly have selected such convoluted and imprecise (for defendant's purposes) language as "the 10th anniversary of the time a plan participant commenced participation in the plan" instead of a clear and direct phrase such as "the participant's completion of ten years of service."
 
 
 45
 In short, we are persuaded that Congress intended that an employee's pension rights would vest, irrespective of the length of his service, either on his 65th birthday or on the tenth anniversary of his joining the plan, whichever occurred later, unless the plan itself allowed earlier vesting.
 
 C. Duchow's Accrued Benefits
 
 46
 This conclusion does not mean, however, that every employee will be entitled to a pension calculated on the basis of a minimum of ten years of service. Although the time of vesting under the first clause of § 203(a) does not depend on the length of an employee's service, the amount of pension benefits that become vested, or nonforfeitable (see note 2 supra), does depend on the length of service. Thus, § 3(19) of ERISA defines "nonforfeitable" by referring to "that part of an immediate or deferred benefit under a pension plan which arises from the participant's service." 29 U.S.C. § 1002(19).[4] Further, § 204 of the Act, 29 U.S.C. § 1054, sets out the requirements that a plan must meet for the accrual of the benefits to which each participant is entitled, and many of its subparts are linked to the plan participant's years of participation. See Alessi v. Raybestos-Manhattan, Inc., supra, 451 U.S. at 512 n.9, 101 S.Ct. at 1901 n.9. Under § 204(b)(1)(A)(ii), for example, the amount of benefits to be accrued depends on "the number of years ... of (the participant's) participation in the plan." 29 U.S.C. § 1054(b)(1)(A)(ii). See also §§ 204(b)(1)(C), (D) and (E) of the Act, 29 U.S.C. § 1054(b)(1)(C), (D), and (E). Accordingly, we conclude that Duchow became entitled on the tenth anniversary of the commencement of his participation in the Plan, i.e., February 1, 1979, to receive whatever pension benefits he had accrued by virtue of his years of participation in the Plan.[5]
 
 
 47
 Finally, we note defendants' contention that they have no obligation under ERISA to take into account Duchow's participation in the Plan prior to 1979 in calculating his accrued pension benefits because those early years of service were followed by a break of approximately one year and seven months when Duchow was unemployed, and because after he returned to Southland he did not complete a year of service. Section 203(b) of ERISA, 29 U.S.C. § 1053(b), sets forth various rules governing the computation of periods of service, and § 203(b)(3) (B) provides as follows:
 
 
 48
 (B) For purposes of paragraph (1), in the case of any employee who has any 1-year break in service, years of service before such break shall not be required to be taken into account until he has completed a year of service after his return.
 
 
 49
 29 U.S.C. § 1053(b)(3)(B). This provision, however, merely sets out the minimum standards a plan must meet. The Plan here has more lenient break-in-service rules, defining a break in service as "(l)ess than 501 hours in each of three successive plan years." Under the Plan's definition, Duchow's absence from Southland did not constitute a break in service, and hence all of his years of participation in the Plan should be taken into account.
 
 CONCLUSION
 
 50
 The judgment of the district court is reversed, and the case is remanded for further proceedings not inconsistent with this opinion.
 
 
 
 *
 The Honorable JosEe A. Cabranes, of the United States District Court for the District of Connecticut, sitting by designation
 
 
 [1]
 The requirement in § 203(a)(1), that the right to the benefits accrued from an employee's own contributions be vested, is, of course, also unrelated to the period of service
 
 
 [2]
 Nor do we find merit in defendants' hypothesis that, rather than imposing an additional vesting requirement, the first clause of § 203(a) was intended merely to govern the time of payment of benefits. Section 203(a) makes no mention whatever of payment. Rather, it is entitled "Minimum vesting standards," and it specifies the conditions under which an employee's "right" to a pension benefit must become "nonforfeitable." Throughout the legislative history the term "nonforfeitable" was used interchangeably with the term "vested." See, e.g., H.R.Rep.No.93-533, 93d Cong., 2d Sess. 5, 20, 23 (1974), reprinted in 1974 U.S.Code Cong. & Ad.News 4639, 4643, 4658, 4661; H.R.Rep.No.93-807, 93d Cong., 2d Sess. 18 (1974), reprinted in 1974 U.S.Code Cong. & Ad. News 4670, 4685; Sen.Rep.No.93-127, 93d Cong., 2d Sess. (1974), reprinted in 1974 U.S.Code Cong. & Ad.News 4838, 4844; Sen.Rep.No.93-383, 93d Cong., 2d Sess. (1974), reprinted in 1974 U.S.Code Cong. & Ad.News 4890, 4929; see also Nachman Corp. v. Pension Benefit Guaranty Corp., supra, 446 U.S. at 376-78, 100 S.Ct. at 1733-1734
 
 
 [3]
 The Tax Court has reached the same conclusion in interpreting a substantially identical counterpart provision in the Internal Revenue Code, 26 U.S.C. § 411(a) (1976). See Trustees of the Taxicab Industry Pension Fund v. Commissioner, 1981 T.C.M. (CCH) P 651; Board of Trustees of New York Hotel Trades Council & Hotel Association of New York City, Inc. Pension Fund v. Commissioner, 1981 T.C.M. (CCH) P 597; Caterpillar Tractor Co. v. Commissioner, 72 T.C. 1088 (1979)
 We note that in Haeberle v. Board of Trustees of Buffalo Carpenters, 624 F.2d 1132, 1137 n.8 (2d Cir. 1980), our Court touched briefly on the question of retirement-age vesting under § 203(a), in a manner suggesting that it might reject our present interpretation of that section if it were required to reach the question. The Haeberle panel did not analyze that question, however, since § 203(a) was clearly unavailable to Haeberle, who (a) had reached age 65 and his tenth anniversary prior to the enactment of ERISA, and (b) had forfeited his pension credits prior to the date on which § 203(a) became applicable to the plan in which he had participated.
 
 
 [4]
 Section 3(19) provides, in pertinent part, as follows:
 The term "nonforfeitable" when used with respect to a pension benefit or right means a claim obtained by a participant or his beneficiary to that part of an immediate or deferred benefit under a pension plan which arises from the participant's service, which is unconditional, and which is legally enforceable against the plan.
 29 U.S.C. Sec. 1002(19).
 
 
 [5]
 It appears that defendants' opposition to plaintiff's demand for survivor benefits was based solely on its contention that Duchow himself had no entitlement to benefits. If this be so, our determination that Duchow was eligible removes any barrier to the recognition of plaintiff's claim for survivor benefits