**Pearl BANCE, for herself and as Special Administrator of the Estate of Carl Bance, Plaintiff-Appellee,**

v.

**Trustees of the ALASKA CARPENTERS RETIREMENT PLAN, Defendant-Appellant.**

No. 86–4372.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Aug. 3, 1987. Decided Oct. 2, 1987.

As Amended on Denial of Rehearing and Rehearing En Banc Nov. 30, 1987.

Randall G. Simpson, Anchorage, Alaska, for defendant-appellant.

William B. Schendel, Anchorage, Alaska, for plaintiff-appellee.

Before GOODWIN, ANDERSON and BRUNETTI, Circuit Judges.

## OPINION

J. BLAINE ANDERSON, Circuit Judge:

Pearl Bance, widow of Carl Bance, a participant in the Alaska Carpenters Retirement Fund (Fund) brought this action in the United States District Court for the District of Alaska to obtain pension benefits and death benefits allegedly owed her husband for work performed by him under collective bargaining agreements with contributing employers to the Fund. Upon cross motions for summary judgment, the district court entered an order and judgment finding that Carl Bance was entitled to a vested pension benefit payable to Carl Bance and his widow, Pearl Bance, according to the rules and the schedule of benefits of the Carpenters Pension Fund. This timely appeal by the Fund's trustees followed. Because we find the trustees' interpretation of the Fund plan (plan and Fund are used interchangeably) was neither arbitrary, capricious, nor contrary to law, we reverse and remand to the district court for entry of summary judgment in favor of the Fund.

### I.

### FACTS

The facts are not in dispute. Carl Bance was born November 6, 1907. He began work as a carpenter in 1946 and joined the Fairbanks Carpenters Local 1243 in 1953. Mr. Bance's employment history with employers signatory to labor agreements with the Carpenters Local in Alaska was erratic for the years between 1953 and 1977.[1]

The Alaska Carpenters Pension Fund was adopted in 1965 prior to the passage of Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001, *et seq.* (1976) (ERISA). Mr. Bance participated in the Fund a total of four years: 1965, 1975, 1976, and 1977. In 1976, the Fund was amended and restated to conform with ERISA. In February 1984, at the age of 77, Mr. Bance applied for retirement benefits with the Fund. On April 6, 1984, the Fund denied his application for benefits for insufficient years of service and a non-vested benefit under plan language. On Janu-

---

1. This employment history is reflected in the following table:

| | | | | | |
|---|---|---|---|---|---|
| 1956 – 1707 hrs. | 1961 – 1741 hrs. | 1966 – 0 hrs. | 1971 – 0 hrs. | 1976 – 1104 hrs. | 1981 – 0 hrs. |
| 1957 – 1011 hrs. | 1962 – 624 hrs. | 1967 – 0 hrs. | 1972 – 0 hrs. | 1977 – 256 hrs. | 1982 – 0 hrs. |
| 1958 – 1037 hrs. | 1963 – 26 hrs. | 1968 – 0 hrs. | 1973 – 0 hrs. | 1978 – 0 hrs. | 1983 – 0 hrs. |
| 1959 – 1697 hrs. | 1964 – 295 hrs. | 1969 – 0 hrs. | 1974 – 0 hrs. | 1979 – 0 hrs. | 1984 – 0 hrs. |
| 1960 – 1019 hrs. | 1965 – 1071 hrs. | 1970 – 0 hrs. | 1975 – 1422 hrs. | 1980 – 0 hrs. | |

ary 7, 1985, Mr. Bance died and Pearl Bance, his widow and Special Administrator, filed a complaint against the Fund for denial of his pension benefit. While she concedes he did not qualify for a pension under the pre-ERISA plan adopted in 1965, she argues his benefit vested pursuant to the provisions of ERISA and the 1976 plan.

## II.
## ISSUES

The trustees contend that the district court erred in determining that three years of future service credit earned by Carl Bance in 1975, 1976 and 1977 was sufficient to create a vested retirement benefit under the plan rules for vesting. Akin to a determination of this issue is the further contention by the trustees that the district court erred in determining that Carl Bance reached Normal Retirement Age in 1975.

## III.
## STANDARD OF REVIEW

We review a district court's grant of summary judgment *de novo*. *Darring v. Kincheloe,* 783 F.2d 874, 876 (9th Cir.1986). Where there is no genuine issue of material fact, the reviewing court must determine whether the substantive law was correctly applied. *Hernandez v. Southern Nevada Culinary & Bartenders,* 662 F.2d 617, 618–19 (9th Cir.1981). Here, since the facts are not in dispute, the questions on appeal are purely legal. *Id.* at 619. While we review *de novo* the district court's grant of summary judgment, our well-established rule is that the decisions of those empowered with the administration of an employee pension trust are to be sustained unless it is arbitrary or capricious or contrary to law. *Smith v. CMTA–IAM Pension Trust,* 654 F.2d 650, 654 (9th Cir.1981). ERISA trustees have "wide discretion 'short of plainly unjust measures' to decide questions of eligibility." *Ponce v. Construction Laborers Pension Trust,* 628 F.2d 537, 542 (9th Cir.1980) (quoting *Sailer v. Retirement Fund Trust,* 599 F.2d 913, 914 (9th Cir.1979)). Any "reasonable" interpretation of the plan terms should be upheld. *Id.*

## IV.
## DISCUSSION

A. Plan Interpretation

The district court reviewed the plan language of the Fund as amended in 1976 to determine the normal retirement date of Carl Bance. The pertinent language appears in Section 4.01:

Article IV, Section 4.01, *Normal Retirement Date*

The Normal Retirement Date for a Participant shall be the first day of the month coinciding with or immediately following his attainment of age 62 and the date he has fulfilled one of the following requirements:

(a) completion of ten or more years of service, or

(b) attainment of the tenth (10th) anniversary of his Participation Date provided he is an Active Participant or an Inactive Participant earning Uncovered Hours of Employment on or after his 62nd birthday.

■ As the district court acknowledged and recognized under the plan, Mr. Bance could only obtain a normal retirement date, if at all, pursuant to (b) above. Mr. Bance attained the age of 62 on November 6, 1969. He, of course, did not complete ten or more years of service in any combination of years at any time during his participation in the Fund. Therefore, Mr. Bance could only obtain a benefit, if at all, upon his tenth anniversary of his participation date in the Fund, provided he is or was an active participant or inactive participant at or after his 62nd birthday.

It is undisputed that Mr. Bance failed to work under a collective bargaining agreement with a contributing employer from 1965 to 1975. As the district court correctly noted, prior service of Mr. Bance in 1965 was forfeited due to his break in service from 1965 until 1975. Under the terms of either the pre-ERISA or ERISA plan of the Fund, those hours in 1965 were forfeited. The pertinent plan language is found in Section 8.01:

Article VIII, Section 8.01, *Terminations.*

Section 8.01—*Termination of Participation in the Plan.* For purposes of Plan Years prior to January 1, 1978, a participant who is not retired or is not vested in accordance with Section 8.03 shall be deemed a terminated non-vested participant at the end of any two consecutive Plan Years in which he does not have a total of 500 Hours of Service, unless he earns 435 or more Hours of Service in the last year of such two-year period or is on a leave of absence in accordance with Section 8.02.

Therefore, when Mr. Bance returned to active participation with the Fund in 1975, he returned as a "terminated, non-vested participant."

▉ The Fund provides that upon the return of a "terminated, non-vested participant" to covered employment where his consecutive breaks in service exceed the years of service prior to the termination, he acquires a new participation date. This plan language is found in Section 2.19:

Article II, Section
2.19—*Participation Date.*

The term "Participation Date" for an Employee or an Associate Employee, who had Contributions made on their behalf prior to January 1, 1976 shall mean the first day of the month in which he first had Contributions made on his behalf and did not subsequently suffer a termination of service prior to January 1, 1976. . . .

If a Terminated Non-vested Participant returns to Covered Employment before his consecutive one-year Breaks in Service equal or exceed his years of Service prior to his termination, he shall be reinstated as an Active Participant, and upon the subsequent completion of a Year of Service, his "Participation Date" shall be his most recent "Participation Date" prior to his Break in Service.

If a Terminated Non-vested Participant returns to Covered Employment after his consecutive one-year Breaks in Service equal or exceed his Years of Service prior to his termination, he shall be treated as a new Participant and his "Participation Date" shall be the first day of the month following his consecutive one-year Breaks in Service in which he has an Employer Contribution made or owed to the Fund on his behalf.

Therefore, under the terms of the plan, Mr. Bance had acquired a new participation date of 1975 which replaced the 1965 participation date erroneously determined by the district court. Mr. Bance did not qualify for a normal retirement date at the attainment of his tenth anniversary of his participation date in 1975, but, in fact, had only just begun his participation. Since he had only three years into the Fund—the three years of service in 1975, 1976, and 1977—he would not have qualified for a vested pension benefit until he attained his tenth anniversary in 1985 as an active or inactive participant.

Under the unambiguous terms of the plan, Mr. Bance did not qualify for vested benefits. Thus, we find the trustees' interpretation of the plan to be neither arbitrary nor capricious.

B. Plan Compliance to Applicable Law

1. ERISA Minimum Vesting Standards

▉ Because the trustees of the Fund cannot be shown to have acted arbitrarily or capriciously, their decision denying vested benefits to Mr. Bance must be sustained unless the plan language is found to be contrary to law. *Smith v. CMTA–IAM Pension Trust,* 654 F.2d at 654.

ERISA, a federal regulatory scheme governing private pension plans, provides certain minimum vesting requirements that all plans must meet. The United States Supreme Court, in *Alessi v. Raybestos-Manhattan, Inc.,* 451 U.S. 504, 101 S.Ct. 1895, 68 L.Ed.2d 402 (1981), noted that ERISA set forth mandatory minimums by way of alternative formulas under which a qualifying plan must provide for vesting to occur. The Court stated as follows:

... ERISA specifies that this right could be hinged on a minimum length of service, but an employee reaching the minimum should not lose that right, even if

he does not continue working for that particular employer until reaching retirement age. That minimum period of service can be calculated under three different formulas, two of which permit gradual vesting of percentages of the accrued benefits over time. *Compare* 29 U.S.C. § 1053(a)(2)(A) ... with § 1053(a)(2)(B)(C).

*Alessi*, 451 U.S. at 513 n. 10, 101 S.Ct. at 1901 n. 10.

The Fund, with 100% vesting at ten years, meets these minimum requirements set by ERISA, 29 U.S.C. § 1053(a)(2). *See* § 1053(a)(2)(A). However, Pearl Bance cites *Duchow v. New York State Teamsters Conference Pension Retirement Fund*, 691 F.2d 74 (2d Cir.1982), *cert. denied*, 461 U.S. 918, 103 S.Ct. 1902, 77 L.Ed.2d 289 (1983), and contends that ERISA § 1053(a) imposes an additional minimum vesting requirement. The court in *Duchow* determined that the language of § 1053(a) imposes "two distinct types of minimum vesting requirements, one of which [e.g., attainment of normal retirement age] is independent of the employee's years of service." [2] *Id.* at 77.

■ In order to resolve whether the Fund language is contrary to law, this court must construe the ERISA definition of "normal retirement age" found in 29 U.S.C. § 1002(24). ERISA defines "normal retirement age" as the earlier of—

(A) The time a plan participant attains normal retirement age under the plan, or

(B) The later of—

(i) The time a plan participant attains age 65, or

(ii) The tenth anniversary of the time a plan participant commences participation in the plan.

29 U.S.C. § 1002(24). Under the *Duchow* court's interpretation of this statute, vesting cannot be delayed longer than a sixty-fifth birthday or the tenth anniversary of joining a plan, whichever occurs later, unless the plan itself provides for an earlier vesting time. *Duchow*, 691 F.2d at 80.

The Fund in fact provides a vesting schedule earlier than the minimum requirement set by ERISA. Section 4.01 allows for normal retirement to occur either on the 62nd birthday after ten years of service or after the underlying *62nd birthday* when the participant attains his tenth anniversary with active participation in the Fund. Under Section 2.19, the only restriction or condition that the Fund has placed on the tenth anniversary date is that it must occur without breaks in service which are equal to or greater than the periods of service in the Fund. In other words, if a participant cannot remain active in the Fund at least as much as he is out of the Fund and suffers a break in service in excess of time in the Fund, the participant obtains a new participation date and is treated as a new participant. As a result, the tenth anniversary date is similarly moved or delayed.

*Duchow* would not require all pension participants to obtain vested benefits merely by participating in a pension plan once in any ten-year period. The court in *Duchow*, interpreting § 1002(24) to require an additional condition to be met by a plan, stated:

> Congress intended that an employee's pension rights would vest, irrespective of the length of service, either on his 65th birthday or on the tenth anniversary of his joining the plan, whichever occurs later, unless the plan itself allows earlier vesting.

*Id.* at 80.

The district court misconstrued the language quoted from *Duchow* to require vesting of Mr. Bance's benefits in 1975 as the tenth anniversary of Mr. Bance's original participation in the Alaska Carpenters Pension Fund.

---

**2.** As the *Duchow* court stated:

First, the elaborately conjunctive language of § 203(a) [29 U.S.C. § 1053(a) ], requiring that a plan '*shall provide* ... nonforfeitab[ility] upon the attainment of normal retirement age

and in addition shall satisfy the requirements of paragraph [ ] ... (2) of this subsection,' suggests strongly that two sets of requirements are imposed. *Duchow*, 691 F.2d at 77. (Emphasis in original).

We find that neither ERISA, 29 U.S.C. § 1002(24), § 1053(a), nor the decision in *Duchow* require such an incongruous result. Under the district court's analysis, *all* participants who ever participated for just one year in the Fund could eventually obtain a vested benefit merely by working after age 65. We share the trustees' concern that such an assessment, i.e., to allow vested benefits to every participant who participated at some point in the Fund in some prior decade, would create an actuarial and funding nightmare for the Fund's administrators. It would also provide an unintended and impermissible windfall. This cannot be the result envisioned by Congress in passing minimum vesting standards for ERISA plans.

We find it significant to note that the court in *Duchow* recognized that a claimant must continue to be a participant until the later of age 65 or until the 10th anniversary of participation and not have a significant break in service which leads to nonparticipation status. In *Duchow*, the claimant began participation in the plan on February 1, 1969. He had 8.9 years of future service in consecutive years from February 1969 to February 1977. In February 1977, at the age of 69, Duchow applied for pension benefits, but was denied. Duchow subsequently terminated his employment on May 31, 1977, only to be reemployed for two months in January and February of 1979. He then reapplied for pension benefits and was denied. The court held that Duchow had reached his tenth anniversary as a plan participant on February 2, 1979 and was entitled to the eight years of accrued benefits and did not have to obtain ten years of *service*.

At all times from his initial participation in 1969 until application for benefits, Mr. Duchow, at normal retirement age, was a plan participant and did not have a break in service which would have resulted in his termination from the plan and a new participation date. Unlike Mr. Bance, Mr. Duchow had consecutive years of participation with no break in service such that his participation date would have remained unchanged. The court recognized that any break in service by Mr. Duchow would have been critical in determining whether normal retirement age had been attained.[3]

## 2. Applicability of Internal Revenue Code

The tax code requirement for pension plans was enacted in Title II of ERISA. The authority to promulgate regulations relating to minimum participation and vesting requirements of 29 U.S.C. § 1052 and 1053 has been given to the Secretary of the Treasury. 29 U.S.C. § 1202(c).[4] That statute prohibits the Secretary of Labor, who administers the substantive aspects of ERISA, from prescribing other regulations in respect of the participation and vesting requirements, or from applying the Treasury regulations inconsistently with the way they apply under the Internal Revenue

---

3. The court stated:
   Under the Plan's definition, Duchow's absence from Southland did not constitute a break in service, and hence all of his years of participation in the Plan should be taken into account. *Id.* at 80–81.
   Although the court, here, was adjudging the *amount* of pension benefits that Duchow was entitled to, we find such language indicative of the result the court would have reached had they been confronted with the issue of determining *commencement of participation*, along with the pertinent Treasury regulations that pertain thereto. We treat this further discussion below.

4. 29 U.S.C. § 1202(c) provides:
   (c) Extended application of regulations prescribed by Secretary of Treasury relating to minimum participation standards, minimum

vesting standards, and minimum funding standards

Regulations prescribed by the Secretary of the Treasury under sections 410(a), 411, and 412 of Title 26 (relating to minimum participation standards, minimum vesting standards, and minimum funding standards, respectively) shall also apply to the minimum participation, vesting, and funding standards set forth in parts 2 and 3 of subtitle B of subchapter 1 of this chapter. Except as otherwise expressly provided in this chapter, the Secretary of Labor shall not prescribe other regulations under such parts, or apply the regulations prescribed by the Secretary of the Treasury under sections 410(a), 411, 412 of Title 26 and applicable to the minimum participation, vesting, and funding standards under such parts in a manner inconsistent with the way such regulations apply under sections 410(a), 411, and 412 of Title 26.

Code. In addition, the Treasury regulations have been adopted by the Secretary of Labor for use in interpreting the minimum participation and vesting requirements. 29 C.F.R. § 2530.200a–2 (1985).

"Break in Service" is defined by 26 U.S.C. § 410(a)(5)(D) [5] which provides in pertinent part:

(5) Breaks in Service.—

\* \* \* \* \* \*

(D) *Nonvested Participants.* In the case of a participant who does not have any nonforfeitable right to an accrued benefit derived from employer contributions, years of service with the employer or employers maintaining the plan before a break in service shall not be required to be taken into account in computing the period of service for purposes of paragraph (1) *if the number of consecutive 1-year breaks in service equals or exceeds the aggregate number of such years of service before such break.* Such aggregate number of years of service before such break shall be deemed not to include any years of service not required to be taken into account under this subparagraph by reason of any prior break in service. (Emphasis added).[6]

5. 26 U.S.C. § 410(a)(5)(D) was amended in 1984. Even as amended, Bance would lose the participation date of January 1965. The amended statute need not, however, be considered since Bance returned to work in 1975 through 1977 when the pre-amended version was still in effect.

6. The Alaska Carpenters Retirement Plan parallels 26 U.S.C. § 410(a)(5)(D). The Plan provides:

If a terminated Non-Vested Participant is reinstated as an Active Participant when the number of his consecutive one-year Breaks in Service equals or exceeds his Years of Service prior to his termination of participation, such Participant's Years of Service and Credited Service prior to such Break in Service shall not be counted and he shall be treated as a new Participant.

7. Provisions of this paragraph are illustrated by examples. Example (3) sets forth:

Example (3). [The facts are the same as in example (2).] Employee X first became a participant in Plan B on January 1, 1980 at

After experiencing a break in service, the plan years prior to the break in service may be disregarded in determining commencement of participation. The effect that a break in service has on determining the participation date is set forth in 26 C.F.R. § 1.411(a)—(7)(b)(1)(ii), which provides that:

For purposes of paragraph (b)(1)(ii)(B) of this section, participation commences on the first day of the first year in which the participant commenced his participation in the plan, except that years which may be disregarded under *section 410(a)(5)(D) may be disregarded in determining when participation commenced.* (Emphasis added).[7]

Because Mr. Bance had a break in service which exceeded the aggregate number of years of service before the break, his participation status had terminated. Thus, the district court erred in holding that he had reached normal retirement age in 1975 according to 29 U.S.C. § 1002(24) and 26 U.S.C. § 411(a)(8).[8] Had Mr. Bance worked from 1965 through 1971, he would have remained a plan participant in 1975, because, like the claimant in *Duchow,* 691 F.2d at 80, he would have suffered no break in service from the plan (i.e., years of service are not outnumbered by years of consecutive breaks in service). He would

age 53. His participation continued until December 31, 1980, when he separated from the service with no vested benefits. After incurring 5 consecutive 1 year breaks in service, Employee X again becomes an employee and a plan participant on January 1, 1986, at age 59. For purposes of section 411, *Employee X's normal retirement age under Plan B is age 69, the 10th anniversary of the date on which his year of plan participation commenced.* His participation in 1980 may be disregarded under the last sentence of paragraph (b)(1) of this section. (Emphasis added).

8. Normal retirement age pursuant to 29 U.S.C. § 1002(24) and 26 U.S.C. § 411(a)(8) is defined as:

The term "normal retirement age" means the earlier of

(A) the time a plan participant attains normal retirement age under the plan, or

(B) the later of—

(i) the time a plan participant attains age 65, or

(ii) the 10th anniversary of the time a *plan participant commenced participation* in the plan. (Emphasis added).

have then met the requirements of "normal retirement age" according to 26 U.S.C. § 411(a)(8)(B)(ii). Unfortunately, these are not the facts of this case.

■ Pearl Bance argues that the regulation's use of the break in service rule to limit the attainment of normal retirement age violates the intent of Congress and the explicit language as contained in 29 U.S.C. § 1053(a).[9] Great deference is given to the interpretation of the agency charged with administering a statute. *Kwan v. Donovan*, 777 F.2d 479, 480 (9th Cir.1985).[10] Likewise, statutory provisions and regulations, whenever possible, should be construed so as to be consistent with each other. *Citizens to Save Spencer County v. U.S. E.P.A.*, 600 F.2d 844, 870–71 (D.C. Cir.1979). We conclude that in this instance, the language of Regulation 1.411(a) —7(b)(1)(ii) is not in fact inconsistent, nor does it violate 29 U.S.C. § 1053(a). The regulation simply goes on to state that in order to qualify for a benefit at the later of age 65 or the tenth anniversary of participation in a plan, the employee at a minimum must have more years of service as compared to years of consecutive breaks in service. Plan section 2.19 would violate ERISA if it stated that an employee will be treated as a new participant with a new participation date if he returns to work at some point earlier than the time at which his breakin-service years equal or exceed his prior years of service.

Of the many purposes animating those who voted for ERISA, one was clear. Congress intended to set certain standards for pension plans, but not at the expense of employees as a whole.[11] Congress repeatedly made known its concern that a regulatory scheme that was administratively burdensome would not achieve the goal of protecting the pension rights of employees as a group.[12]

Mr. Bance simply got caught between two congressional purposes. Congress wanted to protect employees such as Bance from losing their pension benefits, but it did not want to accomplish that purpose at the expense of overburdening or bankrupting pension funds. We recognize that our conclusion is disappointing under the circumstances. However, we are bound by the terms of § 1053(a) and § 1002(24) and the regulations interpreting the ERISA statutes.

V.

CONCLUSION

Because the language of the Carpenters Pension Fund is not contrary to law, it was error for the district court to order a vested benefit given to Mr. Bance for his three years of participation in 1975, 1976, and 1977. This court accordingly REVERSES and REMANDS to the district court for entry of summary judgment in favor of the Fund.

---

9. Although confronted with a different issue, the *Duchow* opinion, in regard to the two vesting requirements imposed under § 203(a) [29 U.S.C. § 1053(a)], expansively stated that 'the first [is] linked to age without regard to length of service and the second [is linked to length of service] without regard to age.' *Duchow, supra*, 691 F.2d at 77. We, however, find that the Treasury regulations, which the Duchow court, incidently, did not confront, mandate a finding to the contrary, at least insofar as the effect a "break in service" has on determining the date participation is deemed to commence for purposes of achieving the 10th anniversary date."

10. *See Dennard v. Richards Group, Inc*, 681 F.2d 306, 315 (5th Cir.1982) (statutory interpretation of the IRS, as the agency charged to enforce and administer portions of ERISA, is entitled to some deference).

11. Congress' specific concern was that the minimum standards established by ERISA would discourage the growth of pension plans. *See* H.R.Rep. No. 93–533, 93d Cong., 1st Sess., *reprinted in* 1974 U.S.Code Cong. & Admin.News 4639; S.Rep. No. 93–127, 93d Cong., 1st Sess., *reprinted in* 1974 U.S.Code Cong. & Ad.News 4838, 4844; *see also* 120 Cong.Rec. 29,198 (1974) (remarks of Rep. Ullman: overly burdensome requirements would be "self-defeating"), *reprinted in* 1974 U.S.Code Cong. & Admin.News 5167.

12. *See, e.g.,* 120 Cong.Rec. at 29,210–11 (1974) (remarks of Rep. Rostenkowski); *id.* at 29,942 (remarks of Sen. Javits); *see also* ERISA § 3004(a), 29 U.S.C. § 1204(a) (mandating that agencies administering ERISA issue rules "designed to reduce duplication of effort ... *and* the burden of compliance...." (emphasis added)).